(Nos. 58876, 58881 cons.—

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO *et al.*, Appellants, v. DANIEL J. LENCKOS, Acting Director of Revenue, *et al.*, Appellees.

*Opinion filed May 25, 1984.*

Edward C. Rustigan and Martin G. Rosenstein, of Chicago (Mayer, Brown & Platt, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Fred H. Montgomery, Assistant Attorney General, of Chicago, of counsel), for appellees.

William D. Dexter, of Boulder, Colorado, for *amicus curiae* Multistate Tax Commission.

JUSTICE MORAN delivered the opinion of the court:

Plaintiffs, Continental Illinois National Bank and Trust Company of Chicago (the bank) and seven of its corporate subsidiaries, instituted this action pursuant to "An Act in relation to the payment and disposition of moneys received by officers and employees of the State of Illinois by virtue of their office or employment" (Ill. Rev. Stat. 1977, ch. 127, pars. 170 through 172a), seeking Illinois income tax refunds for the years 1973, 1974 and 1975. The disputed taxes were paid by the bank under protest, after it was notified by the Director of the Department of Revenue of the State of Illinois that an audit of its timely filed Illinois income tax returns indicated tax deficiencies for each of the years in question. The circuit court of Cook County entered judgment in favor of the bank. Specifically, the court found that the bank was entitled to a tax credit for the amortized portion of the premiums that the bank had paid to acquire

certain State and municipal bonds. The State had refused to allow for amortization of the bond premium in computing net income for Illinois income tax purposes. (Ill. Rev. Stat. 1973, ch. 120, par. 2—203(b)(2)(A).) The court also ruled that interest income from obligations issued by the United States government should be excluded from the apportionment formula outlined in section 304(c) of the Act (Ill. Rev. Stat. 1973, ch. 120, par. 3—304(c)). This formula is utilized to determine that portion of a financial institution's multistate business income which may be taxed by the State of Illinois. Finally, the court found that the bank was not subject to a penalty for underpayment of its estimated Illinois income tax for the first quarter of the taxable year ending December 31, 1975. Ill. Rev. Stat. 1975, ch. 120, pars. 8—801 through 8—804.

Defendants, the Department of Revenue of the State of Illinois, its director, and the Treasurer of the State of Illinois (collectively referred to as the State), appealed from the judgment of the circuit court. The appellate court reversed the trial court's findings on the amortization and penalty issues. The trial court's finding regarding the apportionment formula was affirmed. (115 Ill. App. 3d 538.) We granted the bank leave to appeal on the amortization issue. (No. 58876) The State's petition for leave to appeal on the apportionment issue (No. 58881) was also granted, and the causes have been consolidated for purposes of review. The Multistate Tax Commission was allowed to file an *amicus curiae* brief in support of the State's position on the apportionment issue. The Multistate Tax Commission is the official administrative agency of the Multistate Tax Compact entered into currently by 19 States and the District of Columbia as full members, and by 11 States as associate members.

The two issues before this court are: (1) whether pre-

miums paid to acquire State and municipal bonds are properly included as "interest" subject to Illinois income tax pursuant to section 2—203(b)(2)(A) of the Illinois Income Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 2—203(b)(2)(A)); and (2) whether interest income, received on United States obligations, should be included in the apportionment formula used to determine the percentage of a financial organization's multistate business income subject to taxation by the State of Illinois. Ill. Rev. Stat. 1973, ch. 120, par. 3—304(c)(3).

## Amortization of Bond Premiums

The bank is the owner of State and municipal bonds. While the interest from these bonds is exempt from Federal taxation, the corporate taxpayer is required to include this interest when computing his base income for Illinois tax purposes. (Ill. Rev. Stat. 1973, ch. 120, par. 2—203(b)(2)(A).) Thus, under the Act, a corporation's base income will include its Federal taxable income with certain modifications, including the addition of "[a]n amount equal to all amounts paid or accrued to the taxpayer as *interest* during the taxable year to the extent excluded from [Federal] gross income in the computation of taxable income." (Emphasis added.) Ill. Rev. Stat. 1973, ch. 120, par. 2—203(b)(2)(A).

At issue is the meaning of the term "interest" emphasized in the section of the Act quoted above. The bank maintains that the interest received on State and municipal bonds purchased at a premium (an amount exceeding the face value of the bond) should be adjusted when computing net income for Illinois income tax purposes. The bank points out that it will only recover the face value of the bond at maturity. In addition, under the Act, the bank cannot recognize a loss upon redemption or disposition of the bond. As such, when computing its base income for the years in dispute, the bank excluded,

from the interest payments received on the bonds, an amortized portion of the premium paid to acquire the bonds.

In support of its position, the bank sets forth several arguments. Initially, the bank maintains that failure to recognize bond-premium amortization when computing base income violates the object of the Illinois Income Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 1—101 *et seq.*). The Act imposes a tax measured by "net income," not by capital. (Ill. Rev. Stat. 1973, ch. 120, par. 2—201(a).) To illustrate its position, the bank sets forth the following example. The bank purchases a $100 municipal bond for $105, with a stated interest of 5% per year. The bond is redeemable in 10 years for $100. Each year the bank would realize a $5 payment on the bond. The bank asserts that only $4.50 per year should be recognized as interest income for Illinois income tax purposes. It would reduce the $5 payment by $.50 each year for 10 years and thus recoup the premium paid to acquire the bond.

The State contends that the entire $5 payment must be reported as interest income each year. The State argues that the clear language of section 2—203(b)(2)(A) of the Act requires that the taxpayer add *all interest* payments excluded from his Federal gross income back into his Illinois base income. Since State and municipal bonds are exempt from Federal taxation and the Illinois act authorizes no deductions for amortized premiums, it follows that the entire amount of interest payment is properly included in the computation of base income.

The bank contends that interest income earned on federally exempt bonds should be taxed in the same manner as federally taxable bonds. Section 171(a)(1) of the Internal Revenue Code of 1954, as amended (the Code), allows a deduction for the amortizable bond premium on a federally taxable bond. (26 U.S.C. sec. 171 (1976).) Thus, if the bonds at issue in this case had been

subject to Federal taxation, the bank would have been allowed to adjust the interest received on the bonds to reflect the amortized premium. As such, the bank would only have been responsible, for Federal tax purposes, for the interest, less the amortized premium. Since a corporation's base income, under the Act, will include its Federal taxable income, only that portion of the interest would, in turn, have been subject to the Illinois income tax. If the State's position is followed, federally exempt bonds purchased at a premium will be taxed at a higher rate for Illinois income tax purposes than bonds purchased at a premium which are not federally exempt.

Directly related to this argument is the bank's argument that this disparate tax treatment violates the due process and equal protection clause of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and the due process and equal protection and the uniformity provisions of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, sec. 2; art. IX, sec. 2).

It is undisputed that the legislature has broad powers to establish reasonable classifications in defining subjects of taxation. (*Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 45; *Fiorito v. Jones* (1968), 39 Ill. 2d 531, 535.) Classifications, however, "must be based upon real and substantial differences between persons taxed and those not taxed [citation], and they must bear some reasonable relationship to the object of the legislation [citation], or to public policy [citation]." (39 Ill. 2d 531, 535-36.) It is the bank's position that according different treatment to bondholders of federally taxable bonds than to bondholders of federally exempt bonds bears no relationship to the object or policy of the Illinois Income Tax Act, which is to impose a tax measured by the taxpayer's net income. Ill. Rev. Stat. 1973, ch. 120, par. 2—201.

The State's only response to the bank's claim of unconstitutional discrimination is that it contributes to the

"simple design of the Act." The State acknowledges that the Act uses Federal taxable income as the starting point for corporate taxpayers, while providing a few addition and subtraction modifications. It goes on to say that the General Assembly chose not to enact many other additions, deductions, alterations or modifications in keeping with the design of the Act. The State concludes by stating that "[t]his is the reason why federally-exempt bonds are taxed the way they are, and this is not unreasonable."

Our resolution of this issue must be consistent with the general purpose of the Act to impose a tax measured by net income (Ill. Rev. Stat. 1973, ch. 120, par. 2—201). The Supreme Court has acknowledged that income received on a bond purchased at a premium will be less than the total receipts realized therefrom. Thus, in *Hanover Bank v. Commissioner* (1962), 369 U.S. 672, 677, 8 L. Ed. 2d 187, 191, 82 S. Ct. 1080, 1083-84, the court stated:

> "Bond premium is the amount a purchaser pays in buying a bond that exceeds the face or call value of the bond. When a bond sells at a premium, it is generally because the interest it bears exceeds the rate of return on similar securities in the current market. For the right to receive this higher interest rate the purchaser of a bond pays a premium price when making the investment. However, interest is taxable to the recipient, and when a premium has been paid the actual interest received is not a true reflection of the bond's yield, but represents in part a return of the premium paid. It was to give effect to this principle that Congress in 1942 enacted Section 125 [predecessor of section 171] of the 1939 Code, which for the first time provided for amortization of bond premium for tax purposes."

Section 125 of the 1939 Code was explained by the court in *Commissioner v. Korell* (1950), 339 U.S. 619, 621, 94 L. Ed. 1108, 1110, 70 S. Ct. 905, 906, as follows:

"Prior to 1942, bond premium was irrelevant for tax purposes. Whether or not the purchase price exceeded the face value of the bond, the holder considered the full price as the basis for capital gain or loss, and reported all taxable interest received as income. In presenting its 1942 tax proposals, however, the Treasury adopted the view that each receipt of interest is not entirely income but is partially a restoration of capital. Its spokesman pointed to the consequent discrimination against holders of taxable bonds: they were being taxed on a return of capital, while holders of tax-exempt bonds were not. To remedy this inequity, the Treasury recommended that amortization of premium be permitted in the case of taxable bonds, and that the basis for capital gain or loss for all bonds be adjusted by the amount of deduction allowable for taxables and disallowable for tax-exempts. These recommendations were ultimately included in the Revenue Act of [Oct 21] 1942, 56 Stat 798, 822, as sections 113 and 125 of the Internal Revenue Code."

While section 203(b)(2)(A) requires that amounts "paid or accrued to the taxpayer as interest" be added in computing base income, we find that the bank correctly modified the amounts received on the bonds to reflect the amortized premiums. Had the taxpayer included the amortized premiums, they would have been subject to a tax measured by capital, rather than net income. This is clearly in violation of the Act's goal of imposing a tax measured by net income.

Further, we point out that "there is a presumption favoring the constitutional validity of a State's scheme of taxation, 'and this presumption "may be overcome only by a clear showing that it is arbitrary and unsupportable by any set of facts." ' [Citations.]" (*Continental Illinois National Bank & Trust v. Zagel* (1979), 78 Ill. 2d 387, 409.) If we were to adopt the view favored by the State, we would have to conclude that section 2—203(b)(2)(A) of the Act is unconstitutional. It is arbitrary and unreasonable to discriminate by according different treatment to federally ex-

empt bonds than to federally taxable bonds. The differing treatment bears no relationship to the object of the Illinois Income Tax Act to impose a tax measured by net income. The State's argument for simplified administration and enforcement of the Act does not persuade.

Finally, we note that "[a] statutory amendment, presumptively indicative of an intent to change the law, does not conclusively establish that the legislature intended such a change [citation], and the presumption that a change was intended may be ' "*** overcome by more persuasive considerations" ' [citations]." (*Potts v. Industrial Com.* (1980), 83 Ill. 2d 48, 51.) The State maintains that House Bill 1400 (Pub. Act 83—561) is evidence of a legislative intent to change section 2—203(b)(2)(A) and is supportive of the State's construction of the law as it existed prior to the adoption of this bill.

House Bill 1400 was passed by the General Assembly in June 1983 and signed by the Governor on September 17, 1983, and is now contained in the Act as section 2—203(b)(2)(H). It allows the taxpayer to deduct "[a]n amount equal to the sum of all amounts disallowed as deductions by Sections 171(a), (2), and 265(2) of the Internal Revenue Code of 1954, as now or hereafter amended, and all amounts of expenses allocable to interest and disallowed as deductions by Section 265(1) of the Internal Revenue Code of 1954, as now or hereafter amended." (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(b)(2)(H).) Since section 171(a)(2) of the Code disallows the deduction of the amortized portion of interest paid on State and municipal bonds (because they are federally tax-exempt), the new section 2—203(b)(2)(H) makes it clear that the taxpayer *can* deduct these amounts on its Illinois tax returns after adding the interest received on State and municipal bonds as per section 2—203(b)(2)(A). Accordingly, we find that in adopting House Bill 1400 (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(b)(2)(H)), the legislature intended to clarify, rather than

change, the existing law. We note that the June 25, 1983, debate in the Illinois Senate on House Bill 1400, while not determinative, supports our conclusion that House Bill 1400 is a clarification of existing law. During that debate, Senator George Sangmeister stated several times that this bill is a clarification of the principle of law that the same treatment should be given to municipal bonds as is given to corporate bonds issued at a premium.

It is true that "[w]ithout an express statutory provision stating an act is to have retroactive effect, it can only be applied prospectively." (*Village of Wilsonville v. SCA Services, Inc.* (1981), 86 Ill. 2d 1, 18.) Because we find that House Bill 1400 merely clarified the existing law, this proposition of law has no bearing on our determination of this issue. We find that the bank was entitled to amortize the premiums that it had paid to acquire State, county and municipal securities for the 1973, 1974 and 1975 tax years. Therefore, the judgment of the appellate court on the amortization issue must be reversed.

## Apportionment Formula

When a corporation derives income from both Illinois and one or more other States, it becomes necessary to apportion the percentage of its income which may be taxed by this State. Section 3—304(c) of the Act (Ill. Rev. Stat. 1973, ch. 120, par. 3—304(c)) sets forth the one-factor formula to be utilized by a financial organization when making this determination. It provides in relevant part:

"(c) Financial organizations. Business income of a financial organization shall be apportioned to this State by multiplying such income by a fraction, the numerator of which is its business income from sources within this State, and the denominator of which is its business income from all sources. For the purposes of this subsection, the business income of a financial organization from

sources within this State is the sum of:

\* \* \*

    (3) Interest and dividends received within this State; \*\*\*."

The apportionment formula, therefore, may be expressed as follows:

$$\frac{\text{Illinois Gross Receipts}}{\text{Gross Receipts from all States}} \times \text{Tax Base} \times 4\%^* = \text{Illinois income tax}$$

(Business Income)

*(4% = corporate tax rate for the years in question)

Thus, if a bank involved in multistate business had Illinois gross receipts of $500 and gross receipts from "all States" totaling $1,000 and a taxable business income from all sources of $800, the formula would work as follows:

$$\frac{\$500}{\$1,000} \times \$800 \times 4\% = \$16$$

At issue is the interest received by the bank on obligations of the United States government. During the 1973, 1974 and 1975 tax years, the bank received interest of $43,145,641, $62,176,825 and $54,679,968, respectively, in Illinois, on such Federal obligations. The bank excluded that interest when calculating the numerator and denominator of its gross receipts factor. This interest was also deducted by the bank when it computed its tax base.

The State does not contest the deduction of such interest from the tax base, since it is clearly exempt from Illinois income tax. (31 U.S.C. sec. 742 (1969) (now codified as 31 U.S.C. sec. 3124 (1982))). The State, as well as the Multistate Tax Commission, takes the position, however, that this tax-exempt interest should be included in the numerator and denominator of its gross-receipts factor. Although 31 U.S.C., section 742, prohibits taxation, directly or indirectly, on interest earned on United States obligations, the State maintains that since such interest is not included in the tax base, it is not considered in the computation of a tax as prohibited by the Federal statute. Rather,

the interest is only used to distribute the tax base among jurisdictions in proportion to the percentage of business activity conducted in that jurisdiction. The Multistate Tax Commission, in support of this position, argues that inclusion of the interest earned on United States obligations is necessary to ensure the "fundamental principle" established by the drafters of the Division of Income for Tax Purposes Act (see Ill. Rev. Stat. 1983, ch. 120, par. 3—301 *et seq.*). In *GTE Automatic Electric, Inc. v. Allphin* (1977), 68 Ill. 2d 326, this court stated that "[t]he purpose of the uniform act and article 3 of the Illinois act is to assure that 100% and no more or no less, of the business income of a corporation doing multistate business is taxed by the States having jurisdiction to tax it." 68 Ill. 2d 326, 335.

Under section 742 of title 31 of the United States Code (1976), "[a]ll stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes." In *Society for Savings v. Bowers* (1955), 349 U.S. 143, 144, 99 L. Ed. 950, 955, 75 S. Ct. 607, 608, Mr. Justice Harlan stated:

> "In 1829 this Court decided in *Weston v. City Council of Charleston* [27 U.S. (2 Pet.) 449, 7 L. Ed. 481], that obligations of the Federal Government are immune from state taxation. This rule, aimed at protecting the borrowing power of the United States from state encroachment, was derived from the 'Borrowing' and 'Supremacy' Clauses of the Constitution, and the constitutional doctrines announced in *McCulloch v. Maryland* [(1819), 17 U.S. 316 (4 Wheat.) 316, 4 L. Ed. 579.] It was subsequently embodied in a succession of federal statutes, the

existing statute being R.S. section 3701, 31 U.S.C. section 742. The rule has been carried forward to embrace indirect taxation of such obligations through their inclusion in a tax imposed on all the property of a taxpayer."

Until 1959, 31 U.S.C. section 742 only provided that obligations of the United States were exempt from taxation by or under State, municipal or local authority. In 1959, Congress amended section 742 by adding the second sentence of the section, quoted above. This addition emphasized the absolute prohibition of any consideration of such obligations, either direct or indirect, in the computation of a State or local tax. By including the interest received on United States obligations in the apportionment formula, the State, in this case, would do indirectly that which it is prohibited from doing directly. See *Federal Products Corp. v. Norberg* (R.I. 1981), 429 A.2d 447; *First Federal Savings & Loan Association v. Department of Revenue* (Mont. (1982), 654 P.2d 496, *cert. denied* (1983), 462 U.S. 1144, 77 L. Ed. 2d 1378, 103 S. Ct. 3128.

In *American Bank & Trust Co. v. Dallas County* (1983), 463 U.S. 855, 77 L. Ed. 2d 1072, 103 S. Ct. 3369, the court considered a State bank-shares tax based on an equity-capital formula. The formula computed the tax on the basis of the difference between a bank's capital assets and liabilities. The court held that the tax was violative of section 742 because "such a tax takes into account, at least indirectly, the federal obligations that constitute a part of the bank's assets." (463 U.S. 855, 863, 77 L. Ed. 2d 1072, 1079, 103 S. Ct. 3369, 3374.) In a strongly worded opinion, the court emphasized that 31 U.S.C. section 742, "as amended in 1959, is sweeping[,] *** 'extend[ing] to *every form* of taxation that would require that either the obligations or the interest thereon, or both, *be considered, directly or indirectly, in the computation* of the tax.' " (Emphasis in original.) (463 U.S. 855, 862, 77 L. Ed. 2d 1072, 1078, 103 S. Ct. 3369, 3374.) Further, "[u]nder the

plain language of the 1959 amendment, \*\*\* the tax is barred regardless of its *form* if federal obligations must be considered, either directly or indirectly, in *computing* the tax." (Emphasis in original.) 463 U.S. 855, 862, 77 L. Ed. 2d 1072, 1079, 103 S. Ct. 3369, 3374.

Including tax-exempt interest on United States obligations in the apportionment formula outlined in section 304(c) of the Act results in the indirect (at a minimum) consideration of a Federal obligation in the computation of a State tax. It is impossible to reconcile this approach, as taken by the State and the Multistate Tax Commission, with the express prohibition of 31 U.S.C. section 742 (1976) and the illuminating interpretation of section 742 opined in *American Bank & Trust Co.* We do find that it is possible to apply the section 304(c) apportionment formula without running afoul of the supremacy clause of the United States Constitution (art. VI, cl. 2) as well as article I, section 8, which provides Congress with the power "[t]o borrow money on the credit of the United States." U.S. Const., art. I, sec. 8, cl. 2.

Section 304(c)(3) of the Act (Ill. Rev. Stat. 1973, ch. 120, par. 3—304(c)(3)) instructs the taxpayers to include "[i]nterest and dividends received within this State" in the apportionment formula. The State maintains that the clear language of this provision mandates the inclusion of tax-exempt, as well as taxable, interest received within Illinois. We do not agree. "The purpose of the apportionment formula is to confine the taxation of business income to that portion which is attributable to activities in Illinois." (*Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, 123, *appeal dismissed sub nom, Chicago Bridge & Iron Co. v. Caterpillar Tractor Co.* (1983), 463 U.S. 1220, 77 L. Ed. 2d 1402, 103 S. Ct. 3562.) It is illogical to assume that the General Assembly would devise a formula to measure taxable income which includes income that is clearly tax-exempt.

We conclude, therefore, on the basis of the relevant Federal statute (31 U.S.C. sec. 742 (1969)) and the recent decision of the Supreme Court in *American Bank & Trust Co. v. Dallas County* (1983), 463 U.S. 855, 77 L. Ed. 2d 1072, 103 S. Ct. 3369, that tax-exempt interest income on obligations of the United States may not be taken into consideration in apportioning taxable income. As such, the judgment of the appellate court on the apportionment issue is affirmed.

The judgment of the circuit court of Cook County is affirmed as to the amortization and apportionment issues. Also, since the bank has not challenged the appellate court's reversal of the circuit court as to the penalty issue, the appellate court is affirmed in that regard and the circuit court is reversed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part.*