SEARLE PHARMACEUTICALS, INC., Appellant, v. THE DEPARTMENT OF REVENUE, Appellee.

First District (4th District) No. 84—2036

Opinion filed January 16, 1986.

McMORROW, J., dissenting.

Sidley & Austin, of Chicago (Henry L. Mason III, J. Douglas Donenfeld, and Lisa A. Hausten, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellee.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiff, member of an affiliated corporate group that voluntarily elected to exercise the privilege of filing a Federal consolidated tax return (26 U.S.C. sec. 1501 (1984)), filed an amended Illinois tax return seeking a refund arising from carrying back a net operating loss. Defendant, Illinois Department of Revenue, denied plaintiff's claim for refund, finding that the clear and literal language of section 2—203(e)(2)(E) of the Illinois Income Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(e)(2)(E)) requires that any member of an affiliated corporate group electing to file a consolidated return be deemed to have made the carryback relinquishment election set forth in section 172 of the Internal Revenue Code (26 U.S.C. sec. 172(b)(3)(C) (1984)), such that net operating losses may only be carried forward for purposes of State tax liability.

Upon denial of its claim for refund, plaintiff filed a complaint for administrative review in the circuit court of Cook County, challenging

the constitutionality of section 2—203(e)(2)(E) as a denial of equal protection and uniformity of treatment. The circuit court upheld the statute, and plaintiff now appeals.

We affirm the decision of the circuit court.

BACKGROUND

Plaintiff, Searle Pharmaceuticals, Inc., formerly Searle Diagnostics, Inc. (Searle), is a 100% owned subsidary of G.D. Searle & Company of Skokie that consented to the filing of its United States Income Tax Return on a consolidated basis pursuant to the election to exercise that privilege set forth in section 1501 of the Internal Revenue Code. 26 U.S.C. sec. 1501 (1984).

For the taxable year ending December 31, 1977, G.D. Searle and its consolidated subsidiaries, including plaintiff, filed a Federal consolidated return reporting a loss of $22,919,533, later amended to $23,935,337. Searle prepared a *pro forma* Federal income tax return for 1977, reporting for State tax purposes $7,005,123 of the consolidated loss as its income loss.

On April 9, 1981, plaintiff filed an amended Illinois corporate income tax return for 1974, attempting to carry back its 1977 *pro forma* income loss to reduce its 1974 Federal taxable income for State tax purposes from $4,951,137 to zero, and seeking a State tax refund of $103,193. On that same date, plaintiff filed an amended Illinois corporate income tax return for 1975, attempting to carry back the remainder of its 1977 *pro forma* loss to reduce its 1975 Federal taxable income for State tax purposes from $4,946,610 to $2,892,624, and seeking a State tax refund of $44,032.

On July 23, 1981, defendant, the Illinois Department of Revenue (Department), denied plaintiff's claims for refunds for the taxable years 1974 and 1975 on the ground that section 2—203(e)(2)(E) of the Illinois Income Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(e)(2)(E)) requires an affiliate that consents to filing a consolidated Federal income tax return to carry forward net operating losses to adjust separately determined Federal taxable income in future years.

Plaintiff filed a complaint for administrative review in the circuit court of Cook County, challenging the constitutionality of section 2—203(e)(2)(E) on the basis of equal protection and lack of uniformity. The circuit court affirmed the decision of the Department, upholding the constitutionality of section 2—203(e)(2)(E) of the Illinois Income Tax Act and affirming the denial of plaintiff's claims for tax refunds. Plaintiff now appeals.

Opinion

On appeal, plaintiff challenges the constitutionality of section 2—203(e)(2)(E) of the Illinois Income Tax Act on the ground that it unfairly discriminates against affiliated corporations that voluntarily choose to take advantage of the privilege offered in section 1501 of the United States Internal Revenue Code (26 U.S.C. sec. 1501 (1984)) of filing a consolidated Federal tax return. Section 2—203(e)(2)(E) of the Illinois Income Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(e)(2)(E)) reads as follows:

> "(E) Consolidated corporations. In the case of a corporation which is a member of an affiliated group of corporations filing a consolidated income tax return for the taxable year for federal income tax purposes, taxable income determined as if such corporation had filed a separate return for federal income tax purposes for the taxable year and each preceding taxable year for which it was a member of an affiliated group. *For purposes of this subparagraph, the taxpayer's separate taxable income shall be determined as if the elections provided by Section 243(b)(2) and Section 172(b)(3)(C) of the Internal Revenue Code had been in effect for all such years; \*\*\*."* (Emphasis added.)

The election referred to in section 2—203(e)(2)(E) with which plaintiff takes issue is that provided by section 172(b)(3)(C) of the Internal Revenue Code, which provides that any taxpayer entitled to a net operating loss carryback period, in which losses may be carried back to reduce taxable income for the three taxable years preceding the taxable year of such loss, may elect to relinquish the entire carryback period, thereby electing to carry forward the losses to reduce taxable income in future years. (26 U.S.C. sec. 172(b)(3)(C) (1984).) The effect of section 2—203(e)(2)(E) is that affiliated corporations that voluntarily consent to file consolidated Federal tax returns are deemed to have made the election to relinquish the carryback period and are consequently required to carry forward net operating losses. Such is not the case with affiliated corporations that do not choose to file consolidated Federal tax returns; they are not deemed to have made the election to relinquish the carryback period and may, accordingly, choose to carry back net operating losses to reduce taxable income from prior taxable years.

Plaintiff asserts that the disparity of treatment arising from the "deemed" election of carryback relinquishment made for those affiliate corporations that choose to file consolidated Federal tax returns renders section 2—203(e)(2)(E) discriminatory as an unconstitutional denial of equal protection. Plaintiff maintains that (1) this difference

in treatment of affiliates that file consolidated Federal tax returns and affiliates that file separate Federal tax returns violates the constitutional requirement that taxpayer classifications be rationally based and related to a proper legislative purpose, and (2) that the difference in treatment of the two corporate groups has no rational basis and no logical relation to any legitimate purpose.

■ The Department, on the other hand, posits that section 2—203(e)(2)(E) is not unconstitutional as a denial of equal protection since a set of facts, namely administrative convenience and fiscal planning, can be conceived to sustain the classification. Defendant further asserts that section 2—203(e)(2)(E) is not unconstitutional due to the voluntary nature of the election made at the Federal level that determines whether plaintiff is included or excluded from the classification set forth therein. The trial court; finding that (1) there was a set of facts that justified the classification and (2) that the classification bears a rational relationship to a legislative purpose, affirmed the decision of the hearing officer and upheld the constitutionality of section 2—203(e)(2)(E). Based on the following analysis, we agree with the decision of the trial court.

I

■ The power of the legislature to make classifications, particularly in the field of taxation, is very broad, and the fourteenth amendment to the Federal Constitution imposes no iron rule of equal taxation. (*Department of Revenue v. Warren Petroleum Corp.* (1954), 2 Ill. 2d 483, 119 N.E.2d 215.) Legislation which does not create a suspect classification or infringe upon a fundamental right, but rather involves economic and social welfare policy, will be upheld against equal protection challenges if it is rationally related to the achievement of a legitimate State interest. (*Clayton v. Village of Oak Park* (1983), 117 Ill. App. 3d 560, 453 N.E.2d 937.) In taxation, even more than in other fields, legislatures possess the greatest freedom in classification. (*Madden v. Kentucky* (1940), 309 U.S. 83, 84 L. Ed. 590, 60 S. Ct. 406.) There is a presumption of constitutionality which can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. (*Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 362 N.E.2d 1030.) The burden is on the one attacking the legislative arrangement to negate every conceivable basis that might support it. *Lehnhausen v. Lake Shore Auto Parts Co.* (1972), 410 U.S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001.

When the classification in a State law is called into question on

the ground that it is a violation of the equal protection clause, if any stated facts reasonably can be conceived that would justify it, the existence of that state of facts at the time the law was enacted must be assumed. (*Lindsley v. Natural Carbonic Gas Co.* (1911), 220 U.S. 61, 55 L. Ed. 369, 31 S. Ct. 337.) The statement of facts presented by plaintiff that justify the passage of section 2—203(e)(2)(E) (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(e)(2)(E)) by the Illinois legislature in 1977 focus on the fiscal and administrative problems facing the State at that time and the exacerbation of those problems due to the distinctive and complex nature of the Federal consolidated tax return and the regulations by which such returns are governed.

That this statement of facts existed at the time Senate Bill 1295, later enacted as section 2—203(e)(2)(E), was introduced is suggested by its legislative history and the remarks of Representative Campbell, in which the fiscal and administrative problems facing the State and the attempt to alleviate the exacerbation of those problems by the deeming of a carryback relinquishment are evident:

> "*** Senate Bill 1295 will accomplish two things. First, it will eliminate the need to process amended returns for a corporate taxpayer suffering a loss if that taxpayer is part of an affiliated group. Second, it will prevent such a taxpayer from using the election otherwise provided for in the Internal Revenue Code simply to reduce his Illinois taxes to the maximum extent possible. And finally, I would like to say that without this change, the corporate taxpayer who is a member of affiliated group has the best of two worlds." 80th Illinois General Assembly Transcript of House Proceedings, June 24, 1977, at 60-61 (statement of Rep. Campbell).

The objectives outlined by Representative Campbell, namely, (1) the elimination of the need to process amended returns and (2) the prevention of a taxpayer using the carryback period election to reduce his Illinois taxes are legitimate ones. As the Department points out in its brief, loss carrybacks generate refunds from prior tax years that must specifically be appropriated by the State legislature which, unlike the Federal government, may not resort to deficit spending if on-hand resources prove to be inadequate. The State is therefore adversely affected by any refund of a substantial size, such as that likely to be claimed by corporate affiliates filing consolidated returns, which becomes due whenever a sizable carryback generates an immediate refund where the funds to make such refunds have not been appropriated. Carry-forwards, on the other hand, affect only future State tax returns and revenue can readily be allocated for such refunds in budg-

etary projections. It is therefore fiscally as well as administratively desirable for the State, in terms of a drain on readily available monetary resources, budgetary planning and allocation, and administrative convenience, to minimize the number of amended returns filed.

 In enacting tax legislation, a legislature may consider difficulties of allocation which would seriously hinder the administration and collection of the tax, and such considerations of administrative convenience furnish a justification for legislative classification. (*Department of Revenue v. Warren Petroleum Corp.* (1954), 2 Ill. 2d 483, 119 N.E.2d 215.) Where, as here, the statute at issue does not create a suspect classification nor infringe upon a fundamental right, but rather involves economic considerations, it will be upheld against equal protection challenges if it is rationally related to the achievement of a legitimate State interest. (*Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 412 N.E.2d 151.) Section 2—203(e)(2)(E), which impacts upon the economic policy of the State, by denying corporate affiliates that file consolidated returns a carryback period, is rationally related to the legitimate State interests of preserving appropriated financial resources, facilitating budgetary planning, and aiding in administrative convenience. Whether section 2—203(e)(2)(E) was the best means available to achieve these desired objectives is not subject to judicial inquiry. *Garcia v. Tully* (1978), 72 Ill. 2d 1, 377 N.E.2d 10.

## II

The second State interest proposed to be furthered by the passage of section 2—203(e)(2)(E) was the prevention of a taxpayer using the carryback period election to reduce his Illinois taxes to a maximum extent. The classification of affiliates that elect to file consolidated returns bears a rational relationship to this legislative object.

The real issue here is whether a taxpayer that has made the election of exercising the privilege of filing a consolidated Federal return for the purpose of gaining certain Federal tax advantages may use those advantages to reduce Federal tax liability and then turn around and rescind the election in order to reduce State tax liability. The Illinois Supreme Court, in *Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, 417 N.E.2d 1343, has said it may not.

The court in *Caterpillar* was presented with the issue of whether domestic corporations that had elected to claim a tax credit on their Federal returns for income taxes paid to foreign governments could have deducted the amount of these foreign taxes from the taxable incomes reported on their Illinois returns such as to reduce State tax

liability. (*Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, 126, 417 N.E.2d 1343, 1355.) The Director of Revenue, the defendant in *Caterpillar*, maintained that if a domestic corporation elected to take a tax credit on its Federal return as opposed to claiming a deduction from taxable income, it was then bound by this election for State tax purposes and could not deduct the credit from the amount of Federal taxable income reported on the State tax return. The court agreed, reasoning as follows:

"The taxpayer had the election of taking a tax credit or a deduction on its Federal return. The election was binding. It would not be permitted to take a tax credit to reduce the Federal tax liability and also take a deduction from the Federal taxable income reported on the State return so as to reduce State taxable income." *Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, 126, 417 N.E.2d 1343, 1356.

The reasoning in *Caterpillar* may be analogized to the instant case. Here, Searle elected, on the Federal level, to exercise the privilege of filing a consolidated tax return in order to obtain certain Federal tax advantages. (See *American Standard, Inc. v. United States* (U.S. Ct. Cl. 1979), 602 F.2d 256.) The privilege extended to a corporate affiliate by section 1501 of the Internal Revenue Code (26 U.S.C. sec. 1501 (1984)) is permissive, not mandatory and is for the benefit of all the affiliated corporations; any corporation in the group may object to the filing of a consolidated return, if such filing is detrimental to that affiliate. However, once an affiliate makes the voluntary election to file a consolidated return, that election, like the election made in *Caterpillar*, is binding on the group member.

In the instant case, as in *Caterpillar*, plaintiff made an election at the Federal level, an election which necessarily preceded the determination of State tax liability, in order to receive privileged treatment. The making of this Federal election automatically placed plaintiff in a privileged classification, that of members of an affiliated group filing Federal consolidated returns. After receiving the Federal benefits yielded by the election, plaintiff now attempts to rescind the election and renounce the classification in order to reduce State taxable income. We find, as did the court in *Caterpillar*, that the Federal election voluntarily made by plaintiff is binding for State tax purposes.

Moreover, it was the voluntary election made by plaintiff pursuant to the provisions of the United States tax laws that created the classification which plaintiff now finds discriminatory. That classification was formed by Federal law and merely adopted by reference in the Illinois Income Tax Act. Article IX, paragraph 3(b), of the Illinois

Constitution explicitly provides that State laws imposing taxes on income may adopt by reference provisions of the laws and regulations of the United States for the purpose of arriving at the amount of income upon which the tax is imposed. (Ill. Const. 1970, art. IX, sec. 3(b).) Section 2—203(e)(2)(E) of the Illinois Income Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(e)(2)(E)) adopts by reference the voluntary classification created by an affiliated group member's election to take advantage of the privilege offered in section 1501 of the Internal Revenue Code. 26 U.S.C. sec. 1501 (1984).

■ Section 2—203(e)(2)(E) adopted this Federal classification and related it to legitimate legislative objectives. Plaintiff, however, while finding nothing unconstitutional about the classification and the special tax treatment afforded the class on the Federal level, now finds the classification and the special tax treatment afforded it on the State level to be unfairly discriminatory. Plaintiff cannot enjoy the privileges inuring to its chosen classification on the Federal level and reject the consequences attached to that classification by the State. *Lehnhausen v. Lake Shore Auto Parts Co.* (1972), 410 U.S. 356, 362, 35 L. Ed. 2d 351, 356, 93 S. Ct. 1001, 1005.

## III

■ The granting of a deduction for net operating losses is a privilege created by statute as a matter of legislative grace. (*Bodine Electric Co. v. Allphin* (1980), 81 Ill. 2d 502, 410 N.E.2d 828.) Here, plaintiff concedes that it has not been denied the privilege of a net operating loss deduction and complains only that the time of deduction, *i.e.*, a carry-forward rather than a carryback, to which the loss may be carried has been restricted by the legislature. Thus, the privilege of the deduction has not been withheld, and members of the class to which plaintiff belongs, those corporate affiliates filing consolidated returns, may carry forward net operating losses to deduct them from future taxable income. Such a mere limitation on the *time* of deduction does not demonstrate the hostile and oppressive discrimination against corporate affiliates filing consolidated returns necessary to overcome the presumed constitutionality of section 2—203(e)(2)(E) of the Illinois Income Tax Act. *Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 362 N.E.2d 1030.

For all of the reasons set forth above, we conclude that the classification made by section 2—203(e)(2)(E) (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(e)(2)(E)) is neither arbitrary nor unreasonable and that it bears some reasonable relationship to the object of the legislation. Accordingly, we affirm the decision of the trial court, upholding the con-

stitutionality of the statute and denying to plaintiff the claims for refund.

Affirmed.

JOHNSON, J., concurs.

JUSTICE McMORROW, dissenting:

Because I conclude that the challenged election provision of the Illinois Income Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(e)(2)(E)) is unconstitutional as a denial of equal protection, I respectfully dissent from the decision of the majority. In my view the provision simply bears no rational relation to the justifications relied upon by the majority as the basis for its opinion. Analysis of the proferred reasons for finding the legislation constitutional demonstrates that the legislation achieves none of the objectives it is intended to accomplish.

The presumption of the validity of tax legislation upon which the majority relies is not irrebuttable. Indeed, it is well settled that the "State may not rely upon a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." (*City of Cleburne v. Cleburne Living Center* (1985), 473 U.S. 432, 446, 87 L. Ed. 2d 313, 324, 105 S. Ct. 3249, 3258; see *Zobel v. Williams* (1982), 457 U.S. 55, 61-63, 72 L. Ed. 2d 672, 678-80, 102 S. Ct. 2309, 2313-14.) In addition, any classification itself must be reasonable and founded upon valid differences between the groups accorded disparate treatment. *Commercial National Bank v City of Chicago* (1982), 89 Ill. 2d 45, 71-73, 432 N.E.2d 227; *Fiorito v. Jones* (1968), 39 Ill. 2d 531, 535-36, 236 N.E.2d 698.

The only distinction in the case at bar is between affiliated corporate members which file consolidated Federal tax returns and those which file unconsolidated Federal tax returns. Based upon this distinction alone, the majority reasons that restricting only the former group to carry forward operating losses, while permitting the latter group the luxury to elect either to carry forward or carry back such losses, is a legitimate classification because (1) it eliminates the need to process amended returns; (2) it alleviates difficulties of allocation which would seriously hinder the administration and collection of the tax; and (3) it prevents a taxpayer's use of the carryback election to reduce his Illinois taxes. In my opinion none of the reasons posited by the majority justifies such disparate treatment of affiliated corporate group members simply on the basis of whether they file consolidated

or unconsolidated Federal tax returns.

None of the goals offered by the majority to justify the statute is accomplished by this legislative scheme. The contention that the legislation eliminates the need to process amended returns is untenable because unconsolidated Federal tax returns wherein a carryback for a net operating loss is claimed must also be processed by the Department. Thus, the legislative scheme does nothing to eliminate any additional burden of processing amended income tax returns. The statute does not alleviate allocation difficulties because the identical allocation difficulties arise whether an election to carry back or carry forward is made by an affiliated corporate member which files an unconsolidated return. These allocation difficulties are created by the legislative scheme itself. Inasmuch as the present scheme permits an affiliated corporate group member which filed an unconsolidated tax return to carry back its loss for the purpose of reducing taxes, it should not deny an affiliated corporate group member which files a consolidated return the same option, even though an effect of such carry back may be the reduction of taxes. Lastly, I note that the majority makes no effort to specify any legitimate difference between an affiliate which files a consolidated return and one which files an unconsolidated return; my analysis also fails to discern any that would justify the distinction found here.

Section 2—203(e)(2)(E) confounds and renders interdependent two separate, distinct and wholly unrelated Federal elections available to corporate affiliates: first, the election to file a consolidated or unconsolidated Federal return; second, the election to carry forward or carry back a net operating loss. The majority's reasoning that the challenged provision is constitutional relies heavily upon statements made by Representative Campbell during the legislature's debate regarding the adoption of the revision to section 2—203(e)(2)(E) at issue here. Yet even these statements were prefaced•with the admission by Representative Campbell, "I'm confused myself." (80th Illinois General Assembly, Transcript of House Proceedings, June 24, 1977, at 60-61 (statement of Rep. Campbell).) In my view this confusion is carried forward in the majority's decision today.

I

The first justification relied upon by the majority is that section 2—203(e)(2)(E) is designed to "eliminate the need to process amended returns for a corporate taxpayer suffering a loss if that taxpayer is part of an affiliated group ***." (140 Ill. App. 3d at 253, citing 80th Illinois General Assembly, Transcript of House Proceedings, June 24,

1977, at 60-61 (statement of Rep. Campbell).) The majority states simply that this objective is "legitimate" without further elaboration. In fact, this objective is illusory. The Department is still required "to process amended returns for a corporate taxpayer suffering a loss if that taxpayer is part of an affiliated group" and files an unconsolidated Federal income tax return. In its brief, the Department of Revenue argues that this objective is one of administrative convenience. According to the Department, in order to audit a member of an affiliated corporate group, it is necessary to compare the State and Federal tax returns filed by the taxpayer. The Department contends that this verification or "tracking" process is rendered more difficult if it must refer to the Federal consolidated return containing financial data from all of the members of the affiliated corporate group.

I am not persuaded by this argument for two reasons. First, the Department's claim overlooks the fact that under the Illinois Income Tax Act, a taxpayer which files a consolidated Federal tax return is also required to file a return for State income tax purposes setting forth its separate Federal taxable income as determined from its Federal income tax return. (See Ill. Rev. Stat. 1981, ch. 120, par. 2—203(e)(2)(E).) Consequently, Federal consolidated income is immaterial under the Illinois Income Tax Act.

More importantly, the Department's contention that denial of the carryback election is justified because of such "tracking" difficulties is illogical. I find no connection between the form of an affiliated corporate member's Federal tax return, an election to carry forward or carry back a net operating loss, and any administrative inconvenience in auditing the member's State tax return. Assuming, *arguendo*, the Department's assertion that "tracking" of an affiliate's tax return is more complicated where the affiliate has filed a consolidated Federal tax return, I see no reason how this could possibly have any bearing on whether the affiliate carries forward or carries back a net operating loss. Instead, any burden of verification arises whenever the State return of a federally consolidated affiliate is audited, without regard to whether the election is made to carry forward or carry back a net operating loss. Indeed, under the present framework a burden of verification could be alleviated only if the Department did not comparatively review the Federal and State returns of affiliated corporate group members which filed a consolidated Federal return and elected to carry forward an operating loss, but did audit the affiliate's State tax returns when a loss was carried back. I am hard pressed to discern the rationality of such a scheme.

The Department claims nevertheless that such "tracking" difficul-

ties arise because "the choice of [an affiliate filing a consolidated federal return] as to whether to carry back or carry forward on the State level for a given year could and often in practice did deviate from the choice made by the affiliated group *** as to whether to carry forward or carry back one's net operating losses on the Federal consolidated tax return for the same taxable year." '

Contrary to the Department's assertion, however, Illinois law does not permit an affiliate to elect a carryback for State income tax purposes when the election to carry back has not been made by the affiliated group for Federal tax purposes. The Illinois Income Tax Act does not create a separate and parallel set of "Illinois deductions" to those deductions allowed under the Internal Revenue Code for the purpose of determining taxable income. (*Bodine Electric Co. v. Allphin* (1980), 81 Ill. 2d 502, 510, 410 N.E.2d 828.) Instead, the Act "authorize[s] a refund of State taxes when a change in the Federal taxable income resulting from a loss carry back effects a change in State base income. ***. [A] net-operating-loss deduction [for federal tax purposes] is relevant to the computation of Illinois tax liability only insofar as this deduction enters into the computation of base income under the relevant provisions of the Act." (*Bodine Electric Co. v. Allphin* (1980), 82 Ill. 2d 502, 510, 410 N.E.2d 828.) In short, since the Illinois Income Tax Act specifically provides that "taxable income" is that which is "properly reportable for Federal income tax purposes for the taxable year under the provisions of the Internal Revenue Code" (Ill. Rev. Stat. 1981, ch. 120, par. 2—203(e)(1)), it necessarily follows that an affiliate which filed a consolidated Federal return could only attempt a loss carryback in its Illinois State tax return if the affiliated group elected a loss carryback in its consolidated Federal return.

## II

The second justification offered by the majority is that the deemed election provision will preserve appropriated financial resources and facilitate budgetary planning. On this point the majority reasons that "loss carrybacks generate refunds from prior tax years that must specifically be appropriated by the State legislature which, unlike the Federal government, may not resort to deficit spending if on-hand resources prove to be inadequate." 140 Ill. App. 3d at 253.

I find this basis insufficient ground upon which to hold the challenged provision constitutional. Difficulties of appropriation and budgetary planning are not alleviated under the present arrangement, as any affiliated corporate group member which files an unconsolidated

tax return creates such problems when it elects to carry back an operating loss. Thus, to deny the election to one group but not another simply because of the consolidated form of a Federal tax return is arbitrary and irrational. Furthermore, if the majority's assumption that refunds "must specifically be appropriated by the State legislature which, unlike the Federal government, may not resort to deficit spending if on-hand resources prove to be inadequate" (140 Ill. App. 3d at 253) is correct, then it would follow that all immediate refunds, not simply those resulting from a loss carryback election, must be specifically appropriated by the legislature, regardless of their natures or sources. None of such appropriation or financial planning bears any direct relation to the form of a taxpayer's Federal tax return *per se.*

### III

The majority concludes that section 2—203(e)(2)(E) is valid because it bears a rational relationship to the legislative objective of preventing a taxpayer's use of the carryback election to reduce his Illinois taxes "to a maximum extent." (140 Ill. App. 3d at 254.) In this regard, the majority finds the Illinois Supreme Court's decision in *Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, 417 N.E.2d 1343, to be analogous. In *Caterpillar,* the court held that since the Illinois Income Tax Act defines taxable income as that which is properly reported for Federal income tax purposes (Ill. Rev. Stat. 1983, ch. 120, par. 2—203(e)(1)), a taxpayer's election to take taxes paid to a foreign government as a credit for Federal income tax purposes was binding upon its State income tax return. Thus, the taxpayer was precluded from claiming a deduction on its State return.

In my view, the majority's reliance upon *Caterpillar* is misplaced, as the decision is distinguishable analytically from the instant case. The central issue in *Caterpillar* was whether an election at the Federal level for taxation purposes was binding upon the taxpayer at the State level. In the case at bar, however, the central issue is whether a taxpayer's opportunity to make two separate, distinct, and unrelated elections at the Federal level (first, to file a Federal consolidated return, and second, to carry a loss back or carry it forward) can be restricted and limited at the State level though denial of a loss carry back if the taxpayer has elected to file a consolidated Federal return. *Caterpillar* would be pertinent here if the issue were whether a Federal election to take a loss carryback or carryover were binding upon the taxpayer at the State level. Consequently, the decision provides no guidance to a resolution of the instant cause.

Instead of *Caterpillar,* I find the reasoning of the Illinois Su-

preme Court in *Continental Illinois National Bank v. Lenckos* (1984), 102 Ill. 2d 210, 464 N.E.2d 1064, *cert. denied* (1984), 469 U.S. 918, 83 L. Ed. 2d 231, 105 S. Ct. 296, applicable to the case at bar. In *Continental Bank*, the court considered whether premiums paid to acquire federally tax exempt State and municipal bonds could be properly included as "interest" subject to Illinois income tax pursuant to section 2—203(b)(2)(A) of the Illinois Income Tax Act. (Ill. Rev. Stat. 1981, ch. 120, par. 2—203(b)(2)(A).) The court reasoned that its "resolution of this issue must be consistent with the general purpose of the Act to impose a tax measured by net income. [Citation.]" (*Continental Illinois National Bank v. Lenckos* (1984), 102 Ill. 2d 210, 217, 464 N.E.2d 1064.) Based upon this premise, the court rejected the Department of Revenue's claim that inclusion of such premiums as income contributed to the " 'simple design of the Act.' " (102 Ill. 2d 210, 217, 464 N.E.2d 1064.) The court reasoned, "It is arbitrary and unreasonable to discriminate by according different treatment to federally exempt bonds than to federally taxable bonds. The differing treatment bears no relationship to the object of the Illinois Income Tax Act to impose a tax measured by net income." 102 Ill. 2d 210, 218-19, 464 N.E.2d 1064.

The Illinois Income Tax Act has two purposes relevant to the instant cause. One of these is to define Illinois taxable income as that which is "properly reportable for federal income tax purposes for the taxable year under the provisions of the Internal Revenue Code." (Ill. Rev. Stat. 1981, ch. 120, par. 2—203(e)(1).) The second objective of the Act is "to put [affiliated groups which file consolidated returns] on a parity with other affiliated groups which do not file consolidated returns ***." (Legislative History of the Illinois Income Tax Act, Official Commentary—Technical Explanation, Illinois State Tax Reporter (CCH), vol. 1, sec. 18—022, at 1910 (1977); see, *e.g.*, Ill. Rev. Stat. 1981, ch. 120, pars. 2—203(b)(2)(O), 2—203(e)(2)(E).) In my view, the challenged section is arbitrary and unreasonable, because it fails to determine an affiliate's State income according to its taxable Federal income, and because it accords different tax treatment to corporate affiliates which file a consolidated Federal tax return and those affiliates which file an unconsolidated Federal return. Thus, the section bears no relationship to the objects of the Act to define State taxable income as that which is properly reportable for Federal income tax purposes and to ensure parity of taxation treatment between affiliates which file consolidated and unconsolidated Federal tax returns. Indeed, section 2—203(e)(2)(E) is inherently and directly contrary to both of these goals.

In relying upon *Caterpillar*, the majority reasons that the "real issue here is whether a taxpayer that has made the election of exercising the privilege of filing a consolidated Federal return for the purpose of gaining certain Federal tax advantages may use those advantages to reduce Federal tax liability and then turn around and rescind the election in order to reduce State tax liability." (140 Ill. App. 3d at 254.) The majority concludes that any injury caused to plaintiff is a result of plaintiff's voluntary election to file a consolidated return, rather than a result of section 2—203(e)(2)(E) itself. In my opinion, this reasoning is disingenuous. At the Federal level, members of an affiliated corporate group may elect to file a consolidated or an unconsolidated tax return. They may also elect to carry forward or carry back any net operating loss. These two elections are separate, distinct, and wholly unrelated. At the State level in Illinois, however, these two Federal elections are linked together and rendered interdependent for State tax purposes by section 2—203(e)(2)(E), such that the filing of a consolidated Federal tax return precludes the election to carry back a net operating loss. In fact, the section impermissibly "creates" a separate set of Illinois "deductions" (*i.e.*, the election to carry forward or carry back a net operating loss), and then forecloses to certain taxpayers the exercise of this "election" at the State level because of the taxpayer's exercise of an unrelated privilege at the Federal level (*i.e.*, the election to file a consolidated return). It is the section itself, not the taxpayer's election, which causes the taxpayer's injury. The essential effect of section 2—203(e)(2)(E) is to penalize a taxpayer at the State level because of the taxpayer's exercise of a privilege at the Federal level. I find this arbitrary, irrational, and contrary to the purposes of the Act.

The majority's decision closes with the comment that denial of a loss carryback is "a mere limitation on the *time* of deduction [which] does not demonstrate the hostile and oppressive discrimination against corporate affiliates filing consolidated returns necessary to overcome the presumed constitutionality of section 2—203(e)(2)(E) of the Illinois Income Tax Act. [Citation.]" (Emphasis in original.) (140 Ill. App. 3d at 256.) I find this conclusion to be in error. In my view, section 2—203(e)(2)(E) works a much greater hardship than merely limiting the time period in which a deduction may be made. Instead, it works the more onerous burden of a total denial of such deductions all together for a certain group of corporate affiliates. For example, if an affiliate's losses are substantial in a taxable year and the affiliate is on the verge of bankruptcy, any carry forward may ultimately occur in a future year in which the affiliate has become insolvent or may

occur in future years in which the affiliate continues to suffer losses. Since it is possible that an affiliated corporate group member's financial situation would be such that a carry forward of net loss would be of little or no benefit, the result of the section may be, essentially, a complete denial of a substantial withholding.

Lastly, I observe that the majority fails to specify any real and substantial differences between affiliates which file consolidated returns and those which file unconsolidated returns in order to justify the challenged section. My analysis reveals no differences between the two groups which would validate the disparate treatment which section 2—203(e)(2)(E) accords them. Such discrimination is not based upon a company's organizational structure, since both classes of taxpayers are members of an affiliated corporate group. It cannot be based upon a company's profits or losses, because even if both classes of taxpayers generate identical amounts of taxable income or loss, only the taxpayer which files a consolidated Federal income tax return is denied the opportunity to carry back its net operating loss. Despite the fact that both groups are identically situated in all material respects, the affiliate filing a consolidated Federal income tax return is penalized by being denied the ability to carry back its losses, even though the affiliate which does not file a consolidated return is free to carry back or carry forward such losses.

The Department of Revenue does not dispute the contention of Caterpillar Tractor Company in its *amicus curiae* brief that Illinois is the only State in this country which penalizes an affiliated corporate member's election of the Federal privilege to file a consolidated Federal tax return by denial of the member's carryback of net operating loss. In fact, those States which have legislated in this area generally have limited all affiliates to only a carryover. (See, *e.g.*, Colo. Rev. Stat. sec. 39—22—504 (1984 supp.); Conn. Gen. Stat. Ann. sec. 12—217(a) (West 1983); Fla. Stat. Ann. sec. 220.13(b)(1)(c) (West 1985 supp.).) In my view, section 2—203(e)(2)(E) arbitrarily singles out certain affiliated corporate group members for disparate and disadvantageous tax treatment merely because they have exercised a Federal election (*i.e.*, the decision to file a consolidated Federal tax return) which is totally unrelated to any valid State administrative, taxation, economic, or budgetary concerns. As such, I conclude that the challenged section is unconstitutional as a denial of equal protection under the law, and would reverse the judgment of the trial court.