MADISON PARK BANK, Plaintiff-Appellee, v. JAMES B. ZAGEL, Director, Department of Revenue, *et al.*, Defendants-Appellants.

Third District    No. 81-112

Opinion filed June 30, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (John D. Whitenack, Assistant Attorney General, of counsel), for appellants.

Bell, Boyd & Lloyd, of Chicago, and Sidney D. Davidson, of Peoria (Douglas H. Walter, of counsel), for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This appeal is brought under the Illinois Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) and seeks a reconsideration of a decision rendered by a hearing officer regarding the Illinois income tax liability of the plaintiff, Madison Park Bank, for the tax year 1974. The hearing officer disallowed the reporting of negative taxable income claimed by plaintiff on its Illinois Form 1120 corporate tax return. That decision was reversed by the Circuit Court of Peoria County. The Director of the Department of Revenue appeals the decision of the circuit court. As frequently occurs with issues raised before this court, we find much merit in the contentions of both the appellant and the appellee, but we cannot totally agree with the positions of either.

On its 1974 Federal tax return, Madison Park Bank reported "taxable income" in the negative amount of $139,947.99. "Taxable income" is a statutorily defined term and represents "gross income, minus the deductions allowed by [title 26, subchapter B, chapter 1 of the United States Code]." (26 U.S.C.S. §63(a) (1974).) Pursuant to 26 U.S.C.S §172, the 1974 negative taxable income was adjusted and carried back to the prior

profitable year of 1971. An amended Federal tax return was filed for the 1971 year and a revised "taxable income" figure was reported for that earlier year. In the same fashion, an amended Illinois tax return was filed for the 1971 year and a refund based on the revised income figure was allowed. The amending of the 1971 Illinois return was mandated by section 506(b) of the Illinois Income Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 5—506(b)), which requires that changes in Federal taxable income be reflected in an amended Illinois return.

Thereafter, an Illinois tax return for the year 1974 was filed by the same taxpayer, reporting the entire negative taxable income, $139,947.99, as the beginning figure for computing the Illinois net income for the tax year. It was this negative entry which caused the Director of Revenue to object to plaintiff's 1974 tax return.

When Illinois adopted the Income Tax Act in 1969 (Ill. Rev. Stat. 1977, ch. 120, par. 1—101 *et seq.*), the General Assembly borrowed unabashedly from the Federal scheme for taxing income. It was determined that, in the case of corporations, a tax would be imposed at the rate of 4% on the taxpayer's "net income" (Ill. Rev. Stat. 1977, ch. 120, par. 2—201(b)(2))', which was defined as that portion of the corporate taxpayer's "base income" allocable to the State of Illinois (Ill. Rev. Stat. 1977, ch. 120, par. 2—202(a)). In turn, the corporate taxpayer's "base income" was defined as "taxable income" as that latter term was defined for Federal tax purposes (Ill. Rev. Stat. 1977, ch. 120, par. 1—102), subject to Illinois modifications (Ill. Rev. Stat. 1977, ch. 120, par. 2—203(b)(1). Those modifications include the addition of state and local bond interest and Illinois income tax paid as well as the subtraction of federal bond interest, Illinois income tax refunds, certain dividends received, and personal property replacement tax paid. Ill. Rev. Stat. 1977, ch. 120, par. 2—203(b)(2).

■■ The contention of the defendant Director of Revenue is that "taxable income" as transferred from the Federal return to begin the computation of the State return cannot be a negative amount. Rather, the defendant urges that if "taxable income" as arrived at by the Federal formula is a negative amount, the taxpayer must begin its computation on the Illinois return with a zero amount. We disagree and can find no basis in the Illinois statute to support the defendant's contention.

As we stated at the outset, the General Assembly borrowed unabashedly from the Federal scheme for taxing income. Our statute provides that "any term used * * * shall have the same meaning as when used in a comparable context in the United States Internal Revenue Code of 1954." (Ill. Rev. Stat. 1977, ch. 120, par. 1—102.) One such term is "taxable income." The Federal meaning of "taxable income" is gross income minus deductions. (26 U.S.C.S. §63(a).) There appears no statu-

tory limitation in the Illinois Act which modifies this Federal definition so as to limit "taxable income" to only those amounts with positive values. Indeed, the Federal concept of a net operating loss as explained by 26 U.S.C.S. §172 contemplates that on occasion, deductions will exceed gross income, thus resulting in a negative amount of "taxable income." The defendant cannot alter this legislative decision by administrative fiat. "Taxable income" as transferred from the Federal tax return to the Illinois tax return may be a negative amount.

■■ While reaching the decision we do with regard to negative "taxable income" we are compelled to further note the merit in the defendant's argument that such a holding without qualification would illegally permit the taxpayer to twice subtract from gross income the same deductions. The General Assembly, with astute foresight, provided that "[n]othing in [section 203] shall permit the same item to be deducted more than once." (Ill. Rev. Stat. 1977, ch. 120, par. 2—203(f).) Therefore, we hasten to qualify our holding in the same manner that the General Assembly qualified its adoption of the Federal concept of "taxable income," to-wit: the computation of Illinois "net income" using the amount of "taxable income" transferred from the Federal tax return must not permit the same item to be deducted more than once.

When the taxpayer reports "taxable income" in a negative amount on its Federal income tax return, it is permitted to offset a portion of the excess deductions against gross income from a prior profitable year. This offset is the net operating loss carryback provided for by 26 U.S.C.S. §172. Not all of the excess deductions qualify as net operating loss, with the exceptions to the net operating loss carryback set forth in 26 U.S.C.S. §172(d). Those portions of the excess deductions—a term synonymous with negative "taxable income"—which do qualify as net operating loss are subtractions from income in a prior year, and those subtractions from income are reflected on the amended Illinois tax return as required by section 506(b) of the Illinois Income Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 5—506(b)). If the taxpayer were permitted to transfer the entire amount of negative "taxable income" to the Illinois tax return for the current year, the result would be to permit the same excess deductions to be subtracted twice from income.

■■ An example may illustrate how the same deductions can twice be subtracted from income. In 1974, Madison Park Bank reported negative "taxable income" of $139,947.99. A portion of this negative amount, which represented an excess of deductions over income, was carried back to the year 1971 as a subtraction from that year's income, thus reducing "taxable income" for 1971. The 1971 reduction was reflected in an amended Illinois tax return for the same year. Thereafter, the entire negative amount of "taxable income" including those portions subtracted from 1971 income,

was again subtracted from income on the 1974 Illinois return. More precisely, the negative amount was added to state and local bond interest income, a positive amount. Of course, the result of this mathematical exercise is that the excess deductions were subtracted from 1974 bond interest income, the same excess deductions which were subtracted from 1971 income. This result contravenes the legislative command of section 203(f) of the Illinois Income Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 2—203(f)). Such a result cannot be countenanced. We hold that when "taxable income" is a negative amount, only so much of the amount as is not deducted as a net operating loss in prior years may be transferred to the current year's Illinois tax return for purposes of computing Illinois "net income."

■■ We recognize that the current regulations of the Department of Revenue make no provision for reducing "taxable income" by the amount of net operating loss carried back to a prior year's Federal tax returns. Likewise, the Illinois tax return forms, which has the effect of regulatory law (Ill. Rev. Stat. 1977, ch. 120, par. 15—1501(a)(19)), makes no provision for such a reduction. Nevertheless, such a reduction is clearly contemplated by the statutory scheme to tax income adopted by the legislature, and any regulation promulgated to the contrary by the Department of Revenue is *ultra vires*. *People ex rel. Charles v. Telford* (1977), 48 Ill. App. 3d 928, 363 N.E.2d 613; *Gapers, Inc. v. Department of Revenue* (1973), 13 Ill. App. 3d 199, 300 N.E.2d 779; *A. E. Staley Mfg. Co. v. Environmental Protection Agency* (1972), 8 Ill. App. 3d 1018, 290 N.E.2d 892.

Based on the authorities hereinbefore set forth, we remand this cause to the hearing officer with instructions to permit the plaintiff to file an amended tax return for the calendar year 1974 in which plaintiff may report "taxable income" in a negative amount to the extent excess deductions from the year 1974 have not previously been subtracted from a prior year's income.

Reversed and remanded.

HEIPLE and BARRY, JJ., concur.