KRAFT, INC., f/k/a Dart and Kraft, Inc., *et al.*, Plaintiffs-Appellees, v. ROGER D. SWEET, as Director of the Department of Revenue, *et al.*, Defendants-Appellants.

Fourth District   No. 4—90—0633

Opinion filed May 16, 1991.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Jennifer A. Keller, Assistant Attorney General, both of Chicago), for appellants.

Don S. Harnack and Richard A. Hanson, both of McDermott, Will & Emery, of Chicago, for appellees.

JUSTICE GREEN delivered the opinion of the court:

This appeal concerns a claim by plaintiffs Kraft, Inc., and nine affiliated corporations (Kraft Group) for a certain subtraction deduction from their taxable income in determining their tax liability under the Illinois Income Tax Act (IITA) (Ill. Rev. Stat. 1987, ch. 120, par. 1—101 *et seq.*) for the tax years 1982 and 1983. That claimed deduction was for sums required by the "subpart F provision" of the Internal Revenue Code of 1954 (IRC) (26 U.S.C. §§951 through 964 (1982)) to be included in the Kraft Group's determination of taxable income for Federal income-tax purposes for those years. The IRC's subpart F provisions "reach a degree of complexity that has rarely if ever been matched in tax legislation." (H. Steiner & D. Vagts, Transnational Legal Problems 1112 (2d ed. 1976).) As we explain later, subpart F relates to undistributed income of controlled foreign corporations (CFC's), and much of the income which is taxable to controlling United States corporations pursuant to that provision has the attributes of a constructive dividend.

The amount of federally taxable income is the starting point upon which Illinois corporate income-tax liability is premised. The allowance of certain subtractions from federally taxable income yields a figure known as "base income," which—reduced by the standard allowable exemption—yields a corporation's net income subject to the IITA. (Ill. Rev. Stat. 1983, ch. 120, pars. 2—201(a), 2—202(a), 2—203(b)(1), (b)(2), (e)(1); *Searle Pharmaceuticals, Inc. v. Department of Revenue* (1987), 117 Ill. 2d 454, 512 N.E.2d 1240.) During the years 1982 and 1983, sections 203(b)(1) and (b)(2)(N) of the IITA allowed a subtraction (deduction) in determining a corporation's base income consisting of "dividends" received from a corporation organized outside the United States, if those dividends had been included in the determination of that corporation's Federal taxable income. (Ill. Rev. Stat. 1983, ch. 120, pars. 2—203(b)(1), (b)(2)(N).) The dispute that thus arises is whether subpart F income was (1) intended by the IITA provisions in force in 1982 and 1983 to be treated as a dividend, or (2) constitutionally required to be so treated. We conclude that neither such intent nor such constitutional requirement existed.

The Kraft Group took their 1982 and 1983 subpart F income shown on their IRC tax returns for those years as subtraction deductions on their IITA returns for those years. After an audit, defendant the Illinois Department of Revenue (Department) issued a notice of deficiency to the Kraft Group for their returns for these years on the basis that an improper subtraction deduction had been taken for the subpart F income. The Department also gave notice of various other claimed deficiencies as to the Kraft Group returns. On September 28, 1988, the Kraft Group paid, under protest, the amounts of the asserted deficiencies.

"An Act in relation to the payment and disposition of moneys received by officers and employees of the State of Illinois ***" (Protest Act) (Ill. Rev. Stat. 1987, ch. 127, par. 170 *et seq.*) sets forth a judicial procedure for paying State taxes under protest, testing the propriety of the levy of the tax and obtaining relief therefrom. On October 25, 1988, the Kraft Group filed in the circuit court of Sangamon County a 10-count complaint pursuant to the Protest Act against the Department, its Director, and the State Treasurer seeking to restrain the defendants from transferring the 1982 and 1983 taxes which they paid under protest and requesting return to them of the amount thereof. On November 23, 1988, the defendants answered, denying the salient allegations of the complaint. On March 2, 1990, the Kraft Group filed a motion for summary judgment as to the claim of defi-

ciency in regard to the subpart F income and, on April 2, 1990, the defendants filed a motion for summary judgment as to that claim.

On July 26, 1990, the circuit court granted the Kraft Group a summary judgment, finding them entitled to the subtraction for subpart F income which they had claimed. A partial refund based upon that determination was ordered. The court found, pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), "there is no just reason for delaying enforcement or appeal of this order." On August 20, 1990, the court entered an amending order speaking to the issue of whether the summary judgment was final as to a "claim," as required for appealability under Supreme Court Rule 304(a). The court found that the dispute as to the subpart F income involved an issue separate and distinct from other matters at issue and involved a severable portion of the money paid under protest. The defendants have appealed. No question has been raised as to the appealability of the summary judgment, and we raise none. We reverse and remand, directing entry of summary judgment for defendants.

On March 7, 1990, the parties filed in the circuit court a written stipulation in which they agreed, *inter alia*: (1) all procedural requirements for filing suit under the Protest Act had been met; (2) members of the Kraft Group operate businesses from locations both within and without Illinois; (3) for the tax years 1982 and 1983, members of the Kraft Group timely filed their Illinois income tax returns as members of a unitary business group using the combined-apportionment method of allocating income (Ill. Rev. Stat. 1987, ch. 120, par. 3—304(e)); (4) as a result of auditing the Kraft Group's Illinois income-tax returns for the 1982 and 1983 tax years, the Department issued notices of deficiency purporting to assess additional income taxes for those years; and (5) during 1982 and 1983, members of the Kraft Group owned CFC's within the meaning of relevant IRC provisions and, consequently, reported subpart F income on their Federal income-tax returns for those years.

The foregoing stipulation leaves only questions of law for decision. This decision depends mostly upon interpretation of sections 203(b)(1) and (b)(2)(N) of the IITA which were in force for the taxable years 1982 and 1983. They then provided that "base income" for a corporation was the corporation's taxable income, which could be modified by deducting:

> "An amount equal to: (i) 85% of the amount by which *dividends* included in taxable income and received from a corporation that is not created or organized under the laws of the United States or any state or political subdivision thereof ex-

ceed the amount of [a certain modification]; plus (ii) 100% of the amount by which *dividends*, included in taxable income and received from any such corporation specified in clause (i) that would but for the provisions of Section 1504(b)(3) of the [IRC] be treated as a member of the affiliated group which includes the dividend recipient, exceed [certain other amounts of modification]." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 120, par. 2—203(b)(2)(N).

The thrust of the foregoing is that the subtraction involved is calculated on the basis of "dividends" from a CFC. To determine whether subpart F income constitutes "dividends" within the meaning of that legislation, we first examine the functions of subpart F of the IRC. It is directed primarily to the practice of United States corporations establishing subsidiary corporations in foreign "tax haven" countries, which have tax rates lower than those of the United States.

By segregating foreign business activities in CFC's, United States corporations could defer payment of United States taxes on the earnings of these corporations until repatriation of the earnings of the foreign subsidiaries in the form of either dividends or liquidating distributions to shareholders, or until sale of holdings in the foreign corporations. In order to address this problem, Congress, in the Revenue Act of 1962 (Pub. L. No. 87—834, 76 Stat. 960 (1962)), enacted subpart F of the IRC. These provisions generally (1) treat all or part of the undistributed earnings of CFC's as if they had been distributed to the major United States shareholders of such corporations in the years in which they were earned, and (2) impose a tax payable by the major United States shareholders in CFC's on this attributable income. H. Steiner & D. Vagts, Transnational Legal Problems 1110-12 (2d ed. 1976); B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, pars. 17.30, 17.31 (5th ed. 1987).

The income of CFC's which is deemed distributed and which is taxable to major United States shareholders of such corporations includes some, but not all, CFC income within the conventional meaning of that term. It also includes, however, some items which are not within the generally accepted meaning of the term "income." Among these are "increase in earnings invested in United States property," which includes (1) long-term loans made to a United States parent corporation by a CFC, and (2) amounts expended by a CFC in purchasing United States property for lease to a United States parent corporation, to the extent these two categories of expenditures generally exceed other subpart F income for the past and present tax years. B. Bittker & J. Eustice, Federal Income Taxation of Corpora-

tions and Shareholders, par. 17.32(2), at 17—77 through 17—78 (5th ed. 1987); H.R. Rep. No. 1447, 87th Cong., 2d Sess., at 63 (1962).

Because much of the CFC income which subpart F deems income of the controlling United States corporation creates cash flow for the parent corporation or reduces its expenditures, the income can be considered to be in the nature of a constructive dividend. This is at the heart of the Kraft Group's contention that the deemed subpart F income should be considered a dividend within the meaning of sections 203(b)(1) and (b)(2)(N) of the IITA. However, this is not true of all subpart F income. Also included in the income deemed distributed to the major United States shareholders of CFC's are illegal bribes, kickbacks, and other amounts paid by or on behalf of a CFC to an official, employee, or agent in fact of a government. 26 U.S.C. §952(a)(4) (1982).

Because much of subpart F income is treated as income for the reason that benefits are bestowed upon the controlling shareholder corporation, various States with State income-tax laws similar to the IITA have construed that income to be a dividend entitled to subtraction deduction. (See, *e.g., Dow Chemical Co. v. Director of Revenue* (Mo. 1990), 787 S.W.2d 276; *Dow Chemical Co. v. Commissioner of Revenue* (1979), 378 Mass. 254, 391 N.E.2d 253; *Commonwealth v. Emhart Corp.* (1971), 443 Penn. 397, 278 A.2d 916.) While those statutes are similar, the opinions give no indication that the term "dividend" is required to be given the strict interpretation which, as we will explain, is required by the IITA.

At times pertinent, section 203(h) of the IITA has stated:

"Legislative intention. *Except as expressly provided by this Section,* there shall be *no modifications* or limitations on the amounts of income, gain, loss or deduction taken into account in determining gross income, adjusted gross income or taxable income for federal income tax purposes for the taxable year, or in the amount of such items entering into the computation of base income and net income under this Act for such taxable year, whether in respect of property values as of August 1, 1969 or otherwise." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 120, par. 2—203(h).

At similar times, section 102 of the IITA has provided:

"Construction. Except as otherwise *expressly* provided or *clearly appearing from the context,* any term used in *this Act* shall have the same meaning as when *used in a comparable context in the United States Internal Revenue Code of 1954* or any successor law or laws relating to federal income taxes and

other provisions of the statutes of the United States relating to federal income taxes as such Code, laws and statutes are in effect for the taxable year." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 120, par. 1—102.

At these same times, section 316(a) of the IRC has defined the term "dividend" as:

"[A]ny distribution of property made by a corporation to its shareholders—

(1) out of its earnings or profits accumulated after February 28, 1913, or

(2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made."

26 U.S.C. §316(a) (1982).

■ Clearly, sections 203(b)(1) and (b)(2)(N) of the IITA, at times pertinent here, did not "expressly" provide for "modifications" (subtraction deductions) for subpart F income in determining the Illinois income tax of a corporation deemed to receive such income. Subpart F has never expressly provided that subpart F income is to be considered as dividends, nor has the context of subpart F ever "clearly" indicated that was intended. While others may construe language similar to that in sections 203(b)(1) and (b)(2)(N) and the purpose for granting dividend subtraction deductions to imply that subpart F income is a dividend, the statutory format of the IITA directs us not to draw this inference.

Our conclusion that we should not infer that subpart F income is a dividend is strengthened by the fact that some constructive subpart F income, such as illegal bribes, kickbacks, and certain types of payments to governments or their agents, does not necessarily involve the flow of any advantage to the United States corporation which may be charged with such income. Apparently nothing of that nature is involved here, but a construction that treats subpart F income as a dividend would lead to the illogical conclusion that a "dividend" resulted from such conduct.

We also note that although subpart F income may, directly or indirectly, enhance the cash flow of the controlling United States corporation, the enhancement of the cash flow does not come from or diminish the accumulated profits of the CFC, as required of dividends by section 316(a) of the IRC. If the transaction constituting subpart F income is the extension of a loan by the CFC to the parent corporation,

the balance sheet of the CFC is affected only by a receivable item in a certain amount appearing on the asset side of its balance sheet and a decrease in the cash on hand by the same amount.

We recognize that our strict interpretation of the provisions of sections 203(b)(1) and (b)(2)(N) of the IITA may be inconsistent with a general policy of the legislation invoked to accord equal tax treatment to dividends of domestic subsidiaries and those of foreign subsidiaries of corporations filing Illinois income-tax returns. (See Ill. Rev. Stat. 1983, ch. 120, pars. 2—203(b)(2)(J), 3—304(a)(3)(B)(ii), 15—1501(a)(28); *General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, 469 N.E.2d 1067; 82d Ill. Gen. Assem., House Proceedings, Nov. 5, 1982, at 4796.) For instance, if the subpart F income here at issue resulted from a loan by a CFC to a group member, as indicated in the Kraft Group's brief, the following would result: Kraft Group pays Illinois income taxes on that amount in a given year; then, in a future year, when the CFC profits used to make the loan are actually distributed by the CFC to the Kraft Group corporation, no deduction can be taken by that corporation because the dividend would not be part of the IRC income of the Kraft Group corporation for that year. While only one tax under the IITA for the distributed income would be incurred, no such tax would have been incurred if the profits had been distributed the year in which the subpart F income was received by the CFC.

■ The Kraft Group also maintains that treatment by the Department of subtractions arising from the operation of section 78 of the IRC (26 U.S.C. §78 (1982)) under section 203(b)(2)(N) of the IITA is inconsistent with the position taken by the Department concerning the subpart F income involved in this case. The substance of section 78 of the IRC is that if a domestic corporation takes advantage of IRC provisions permitting it to take foreign tax credits, for foreign taxes paid by its foreign subsidiary on the income giving rise to a dividend paid to the domestic corporation by the subsidiary, then the domestic corporation must treat the foreign tax credits as "dividends" for the tax years in which they are taken. (26 U.S.C. §78 (1982).) We do not fully understand the Kraft Group's theory as to how the treatment given that "dividend" by section 203(b)(2)(N) is inconsistent with the treatment given subpart F income. However, any disparity in treatment would appear to be justified by the fact that section 78 describes the amount of the tax credit as a "dividend" and the IRC does not describe subpart F income as a dividend.

In January 1987, the General Assembly reclassified sections 203(b)(1) and (b)(2)(N) to sections 203(b)(1) and (b)(2)(O) of the IITA

(Ill. Rev. Stat. 1987, ch. 120, pars. 2—203(b)(1), (b)(2)(O)) and amended them to provide that the "dividends" which formerly were the basis for a subtraction under sections 203(b)(1) and (b)(2)(N) include "for taxable years ending on or after December 31, 1988, dividends received or deemed received or paid or deemed paid under Sections 951 through 964 of the Internal Revenue Code [subpart F]." (Ill. Rev. Stat. 1987, ch. 120, par. 2—203(b)(2)(O).) Despite the fact that this legislation expressly indicates that the subtraction for subpart F income is applicable only to tax years ending on or after December 31, 1988, the Kraft Group maintains that the legislation was intended to clarify section 203(b) as it existed for the years 1982 and 1983.

As noted by the Kraft Group, Senator Netsch stated the following during the debate concerning the bill which established a subtraction for subpart F income:

> "The bill at the behest of the State Chamber of Commerce and other business groups does allow subpart F income as a deduction [subtraction] on State corporate tax returns. That is what the business community wanted. There had been a dispute between the Department of Revenue and the taxpayers as to whether or not it was deductible." (84th Ill. Gen. Assem., Senate Proceedings, December 3, 1986, at 6-7 (statements of Senator Netsch) (debates on House Bill 1321).)

However, earlier in the debates regarding this bill, Senator Netsch stated, "[W]e have made it prospective, that is the taxpayers cannot go back and redo any of their returns for prior years ***." (84th Ill. Gen. Assem., Senate Proceedings, June 30, 1986, at 24 (statements of Senator Netsch).) Additionally, the Governor amendatorily vetoed this bill by, *inter alia*, delaying the effective date of the subpart F subtraction for one year. In his amendatory veto message, the Governor stated the delay "will give businesses time to plan capital investment and *give the state time to adjust to the revenue loss.*" (Emphasis added.) 84th Ill. Gen. Assem., House Proceedings, Nov. 6, 1986, at 5205.

As the Kraft Group observes, the supreme court has on prior occasions interpreted taxation legislation as clarifying existing law, rather than enacting new law. (*Continental Illinois National Bank & Trust Co. v. Lenckos* (1984), 102 Ill. 2d 210, 464 N.E.2d 1064; *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 283 N.E.2d 465.) In none of these cases, however, were there statements in the legislative history indicating an intent to accord the enactment prospective effect only. The proviso that the subtractions for subpart F deemed income is available for tax years ending on or after December 31, 1988, strongly sup-

ports the conclusion that the legislation permitting this subtraction was not intended to clarify an existing statute. (*Secretary of State v. Mikusch* (1990), 138 Ill. 2d 242, 562 N.E.2d 168.) The legislative history of the 1987 amendment of the IITA establishing a subtraction for subpart F income does not clearly establish that it was an interpretation or clarification of existing law. Indeed, that history strongly indicates the amendment was intended to have only a prospective effect.

The constitutional challenge by the Kraft Group is based upon the uniformity requirement of the Illinois Constitution of 1970, which states:

> "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." (Ill. Const. 1970, art. IX, §2.)

The Kraft Group's assertion in this regard is very similar to its argument that subpart F income should be construed to be a "dividend" subject to a subtraction deduction because it involves use of CFC assets to benefit domestic parent corporations, just as a dividend does.

■ To survive the scrutiny of the constitutional uniformity requirement, classifications contained in non-property tax laws must be based on a real and substantial difference between persons or entities taxed and those not taxed, and the classifications must bear some reasonable relationship to the object of the legislation or to public policy. (*Searle Pharmaceuticals*, 117 Ill. 2d 454, 512 N.E.2d 1240.) Unquestionably, the inclusion in subpart F income of bribes and kickbacks has a punitive aspect to it. This type of subpart F income clearly differs from dividends which a subsidiary pays to its parent. However, the more usual transactions giving rise to subpart F income are also of a different nature than the distribution of the profits of a CFC by payment of a dividend to its parent. The former transactions have tax-evasive aspects which the legislature may deem less worthy of an income tax subtraction than the straightforward procedure of dividend distribution. If CFC profits are used to effectuate a loan to the parent, the loan presumably will be repaid, and the profits will be returned to the CFC. Similarly, if CFC profits are used to acquire domestic property to be rented to the parent corporation, the rentals will be paid to the CFC.

■ While the present treatment of subpart F income by the IITA may be the easiest and fairest way to treat it, a real and substantial difference exists between the foregoing type of subpart F income and a dividend. This difference is far more substantial than, for instance,

that existing between corporations filing consolidated Federal income-tax returns and those filing separate Federal income-tax returns, which the *Searle Pharmaceuticals* court held was an impermissible basis for determining entitlement to the right to carry back prior years' net operating losses. We hold the denial of a subtraction deduction for subpart F income under sections 203(b)(1) and (b)(2)(N) of IITA for the tax years 1982 and 1983 was not violative of article IX, section 2, of the Illinois Constitution of 1970.

As neither rules of statutory interpretation nor article IX, section 2, of the Illinois Constitution of 1970 directs us to grant the Kraft Group the subtraction they request, we reverse the judgment with respect to the claim on appeal and remand the cause to the circuit court of Sangamon County with directions to enter summary judgment for defendants as to that claim.

Reversed and remanded with directions.

STEIGMANN and McCULLOUGH, JJ., concur.