. SIXTH DIVISION

March 24, 2000 

No. 1-98-4081

ROCKWOOD HOLDING COMPANY, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. ) No. 96 L 50747

)

THE DEPARTMENT OF REVENUE, ) The Honorable

) 
John A. Ward
,

Defendant-Appellee. ) Presiding Judge.

JUSTICE BUCKLEY delivered the opinion of the court:

Defendant, Illinois Department of Revenue (Department), asses-

sed plaintiff, Rockwood Holding Company, with underpayment of its 1986 Illinois income taxes.  Plaintiff protested the assessment, but after a hearing, the Department rejected the challenge.  Then, pursuant to the Administrative Review Law (735 ILCS 5/3-101 (West 1994)), plaintiff filed a verified complaint in the circuit court of Cook County.  The circuit court affirmed the Department's decision and this timely appeal followed.  

On appeal, plaintiff asserts that its 1986 income has been overstated by more than $1,500,000 because its 1984 loss, which was deductible for federal purposes, was not deductible for Illinois purposes.  Specifically, plaintiff seeks reversal of the circuit court's decision and contends that (1) it is entitled to alternative relief under section 304(f) of the Illinois Income Tax Act (the Act)(35 ILCS 5/101 
et seq.
 (West 1992)); (2) its income must be adjusted so that only the net income will be taxed; (3) if the Act does not allow for any adjustment, then defendant's overstatement of plaintiff's taxable income violates the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §2) and the due process clause of the United States Constitution (U.S. Const., amend. XIV, §1); and (4) the penalties imposed on plaintiff should be abated for reasonable cause.  For the reasons set forth below, we affirm.

FACTS

The underlying facts are undisputed.  Plaintiff is a holding company incorporated in Delaware and authorized to do business in Illinois that owns companies in the business of investing and real estate.  In 1984, plaintiff became a 50% general partner in the Caster-Rockwood Partnership (Partnership).  The Partnership was formed as part of a financing arrangement for the Midland-Ross Corporation.  The sole function of the Partnership was to purchase 1,360,000 shares of Midland-Ross preferred stock for $33.50 per share and hold the stock for two years.  After the two-year period, the Partnership was to sell the stock back to Midland-Ross for at least $41.71 per share.

The transaction went ahead as planned.  The Partnership borrowed $45,560,000 and purchased the stock in 1984.  In 1986, Midland-Ross redeemed the stock for $65,497,600.  The Partnership paid off the loan, distributed profits to the partners and then dissolved.

In 1984, the Partnership suffered a net loss because its dividend income was less than its interest expense on the money borrowed to purchase the stock.  Plaintiff's share of the loss was $1,724,388 and its business income apportionable to Illinois was $64,424 in 1984.  As a result, plaintiff's net income was ($1,659,964)
(footnote: 1) and it did not pay taxes in 1984 under the Act. However, when the stock was redeemed in 1986, the Partnership realized profits of $9,820,775.
(footnote: 2)  Plaintiff offset that income by deducting the amount of the 1984 partnership loss on its 1986 tax return.  After an audit, plaintiff's partnership income was adjusted upward by the Department from ($110,021) to $9,710,754, and it was determined that plaintiff owed an additional $525,880 in taxes, penalties and interest.  The Department issued a notice of deficiency, and plaintiff filed a timely protest and request for a hearing.

At the hearing, plaintiff maintained that it should be allowed to deduct the 1984 partnership loss from its 1986 income.  Specifically, plaintiff argued that section 201 of the Act only allows a tax on "net income," but in the event that an offset was not required by section 201, it was entitled to relief under section 304(f) of the Act.  See Ill. Rev. Stat. 1985 ch. 120, pars. 2-201(a), 3-304(f).  The administrative law judge (ALJ) issued a recommendation for disposition rejecting plaintiff's argument on the basis that "carryforward or carryback of this negative amount was not permitted because there was no provision in the [Act]" during the time relevant to this case.  The Department, therefore, upheld its position, and plaintiff filed a verified complaint for administrative review in the circuit court of Cook County.  The circuit court issued an order affirming the Department's conclusion on the merits and subsequently entered judgment in the Department's favor on September 29, 1998, in the amount of $596,737 for $246,661 in underpaid taxes, $232,043 in interest and $118,033 in penalties.  This appeal followed.    

ANALYSIS 

We should first note that the parties to this appeal do not present any factual disputes; only the legal issues are in controversy.  Consequently, we are not bound by the administrative agency's conclusions of law or statutory construction and we will review those decisions 
de novo
.  See 
Raintree Health Care Center v. Illinois Human Rights Comm'n
, 173 Ill. 2d 469, 479, 672 N.E.2d 1136, 1141 (1996).  However, we do recognize that Illinois courts may defer to an administrative agency's interpretations and enforcement of statutes because of the considerable experience and expertise it may have concerning the issues before it.  
Bonaguro v. County Officers Electoral Board
, 158 Ill. 2d 391, 398, 634 N.E.2d 712 (1994), citing 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 97-98, 606 N.E.2d 1111 (1992).

I

The starting point for taxation in Illinois is section 201(a) of the Act, which is titled "[t]ax imposed" and states in relevant part:  "A tax measured by net income is hereby imposed on every individual, corporation, trust and estate *** on the privilege of earning or receiving income in or as a resident of this State."  Ill. Rev. Stat. 1985, ch. 120, par. 2-201(a).
(footnote: 3)  The Act defines "net income" in section 202 as "that portion of [the taxpayer's] base income for such year *** which is allocable to this State *** less the standard exemption allowed by Section 204 and the deduction allowed by Section 207."  Ill. Rev. Stat. 1985, ch. 120, par. 2-202(a).  "[B]ase income," for the purposes of a corporation, is "an amount equal to the taxpayer's taxable income for the taxable year."  Ill. Rev. Stat. 1985, ch. 120, par. 2-203(b)(1).
(footnote: 4)  And "taxable income" is "income properly reportable for federal income tax purposes for the taxable year under the provisions of the Internal Revenue Code."  Ill. Rev. Stat. 1985, ch. 120, par. 2-

203(e)(1).  Therefore, the Act "piggy-backs" onto the federal calculation of income and uses federal taxable income as the premise for tax liability.  See 
Kraft, Inc. v. Sweet
, 213 Ill. App. 3d 889, 891, 572 N.E.2d 389, 390 (1991), 
appeal denied
, 141 Ill. 2d 543, 580 N.E.2d 117 (1991); see also Taxation Today, Dept. of Rev. Newsltr., par. 400-236, at 22, 430-32 (C.C.H.) (Spring 1987).

If the taxpayer is a corporation, then it is a nonresident for allocation and apportionment purposes.  See Ill. Rev. Stat. 1985, ch. 120, pars. 15-1501(a)(14), (a)(20).
(footnote: 5)  For nonresidents, allocation and apportionment depends upon whether the income is "nonbusiness income" or "business income."  See Ill. Rev. Stat. 1985, ch. 120, pars. 3-302, 3-303, 3-304.  This distinction between the two types of income exists in the Act but has no analog under federal tax law.  Once income is allocated or apportioned under the Act, the standard exemption is subtracted (section 204), yielding the taxpayer's net income, which is then multiplied by the tax rate.

In the case at bar, plaintiff asserts that it should not have to pay the judgment entered by the circuit court because its actual income was overstated by more than $1,500,000.  This alleged distortion in plaintiff's income was apparently the result of the 1984 partnership loss being deductible for federal purposes, but not for Illinois purposes.  As a result, the 1984 loss was trapped in 1984 and could not be carried forward to 1986.  The subsequent amendment of the Act in 1985 would have allowed plaintiff's loss to be carried forward in a manner similar to the Internal Revenue Code (IRC).  See Ill. Rev. Stat. 1987, ch. 120, par. 2-207; Pub. Act 84-

1042, eff. November 26, 1985; 26 U.S.C. §172 (1988).  However, the new version of the Act did not apply to losses "carried forward from a taxable year ending prior to December 31, 1986."  Ill. Rev. Stat. 1985, ch. 120, par. 2-203(b)(2)(D).  Plaintiff, therefore, insists that since the Illinois General Assembly recognized the unfairness of the Act and corrected the inconsistency, it should not be responsible for the tax liability that resulted from the stock purchase-sale transaction.  We will now address each specific argument in turn.

II

Plaintiff first contends that the General Assembly could have never intended the result sought by the Department.  Specifically, plaintiff refers to sections 304(f) and 102 of the Act and argues that each provides the alternative relief necessary to reach a fair result.

A

Section 304(f) of the Act allows for an "alternative allocation" of business income to Illinois if "the allocation and apportionment provisions of subsections (a) through (e) [of section 304] do not fairly represent the extent of a person's business activity."  Ill. Rev. Stat. 1985, ch. 120, par. 3-304(f).  To proceed under this section, the taxpayer may petition the Department for, or the Department may require, "[t]he employment of any other method to effectuate an equitable allocation and apportionment of the person's business income."  Ill. Rev. Stat. 1985, ch. 120, par. 3-304(f)(4).

Both the Department and the circuit court rejected this argument.  The ALJ's recommendation stated that section 304(f) did not apply in this case because the issue is not apportionment or allocation, and the parties stipulated to the fact that nonunitary partnership expense was properly allocated to Illinois after apportionment to Illinois of all unitary income.  The ALJ then made clear that since the taxpayer was not challenging the amount of the taxpayer's income from Illinois sources, but instead, "whether any portion of the distributive share of expenses allocated against apportionable business income could be carried forward to another tax year," relief under section 304(f) was not available.  The circuit court also found this section inapplicable, particularly since the language of section 304 "only pertains to situations where the general statutory formulae for 'allocation and apportionment' fail to fairly represent the true extent of a taxpayer's activities within Illinois."  We agree with these determinations.

Plaintiff asks this court to read section 304(f) broadly, so as to correct "'glitches'" that were not foreseen at the time of enactment.  We decline this invitation.  The plain language of section 304(f) seeks to achieve a fair representation of "the extent of a person's business activity" in Illinois.  It does not address the calculation of the taxpayer's tax liability.  And while we agree with plaintiff that the decision in 
Miami Corp. v. Department of Revenue
, 212 Ill. App. 3d 702, 571 N.E.2d 800 (1991), allowed the court to tailor alternative relief to a unitary corporate taxpayer using section 304(f), we find that case unpersuasive here.  In 
Miami Corp.
, the taxpayer was a unitary corporation that sought to use a different method of apportionment to allocate the income derived from its out-of-state operations.  The case, however, said nothing about calculating the taxpayer's income or the fairness of not allowing a loss carryforward.  

An additional basis for rejecting plaintiff's argument is the prospective nature of section 207 of the Act.  It is well established that the allowance of a deduction for net losses is a privilege created by statute as a matter of legislative benevolence.  
Bodine Electric Co. v. Allphin
, 81 Ill. 2d 502, 512-

13, 410 N.E.2d 828, 833 (1980), aff'g 
70 Ill. App. 3d 844, 850, 389 N.E.2d 168, 173 (1979), citing 
United States v. Olympic Radio & Television, Inc.
, 349 U.S. 232, 235, 99 L. Ed. 1024, 1028, 75 S. Ct. 733, 736 (1955).  As a result, courts have determined that deductions are to be strictly construed in favor of taxation.  
Chen v. Department of Revenue
, 196 Ill. App. 3d 583, 589, 554 N.E.2d 428, 431-32 (1990), citing 
Balla v. Department of Revenue
, 96 Ill. App. 3d 293, 295, 421 N.E.2d 236, 238 (1981).  Therefore, a taxpayer will not be entitled to a deduction absent a showing that the deduction is allowed by statute, and the burden of this showing rests on the taxpayer.  
Bodine
, 81 Ill. 2d at 513, 410 N.E.2d at 833.

Originally, the Act did not contain provisions allowing for net loss deductions.  The legislature envisioned that losses would be captured by using federal taxable income as the base for Illinois tax liability, because any net loss would be subtracted while calculating federal taxable income.  See 
Chicago Title & Trust Co. v. Department of Revenue
, 146 Ill. App. 3d 923, 925, 497 N.E.2d 480, 482 (1986) (recognizing the concept of negative taxable income for purpose of Illinois taxation); see also J.B. Truskowski, 
The New Illinois Net Operating Loss Provisions
, 73 Ill. B.J. 654, 654 (1985).  However, this method was unworkable as some taxpayers received the benefit of this deduction twice.  Truskowski, 73 Ill. B.J. at 654-

55.  This led to the enactment of section 207 in 1985.

Section 207 of the Act now aligns itself with the IRC and provides that when "the taxpayer's net income results in a loss, such loss shall be allowed as a carryover or carryback deduction in the manner allowed under Section 172 of the Internal Revenue Code."  Ill. Rev. Stat. 1985, ch. 120, par. 2-207; 26 U.S.C. §172 (West 1988).  Unfortunately for plaintiff, section 207 does not contain any language regarding retroactive application.  A Public Act enacting section 207 specifically states "[t]his Act takes effect upon its becoming a law and shall apply to all taxable years ending on or after December 31, 1986."  See Pub. Act 84-1042 (effective November 26, 1985).  This use of prospective language is a good indication that the General Assembly did not intend to allow for the carryforward of losses sustained prior to 1986.  See Ill. Rev. Stat. 1985, ch. 120, par. 2-203(h) (stating that "there shall be no modifications or limitations on the amounts of income, gain, loss or deduction" unless expressly provided for).  Accordingly, since the loss at issue occurred in the 1984 tax year, we also find that section 207 of the 1985 version of the Act does not apply in this case.       

B

Plaintiff further argues that section 102 of the Act offers alternative relief because it incorporates the federal "tax benefit rule."

The applicable version of section 102 of the Act states:

"Construction.  Except as otherwise expressly provided or clearly appearing from the context, any term used in this Act shall have the same meaning as when used in a comparable context in the United States Internal Revenue Code of 1954 or any successor law or laws relating to federal income taxes and other provisions of the statutes of the United States relating to federal income taxes as such Code, laws and statutes are in effect for the taxable year."  Ill. Rev. Stat. 1985, ch. 120, par. 1-102.  The language employed in this section makes clear that the terms used in the Act will have the same meaning as comparable terms in the IRC.  This provision insures a certain level of uniformity, particularly since the Act utilizes federal taxable income as a starting point for calculating Illinois income tax liability.  However, we will defer to the Illinois Supreme Court's judgment and find that section 102 "does not, by itself, incorporate substantive provisions of the [IRC]."  
Bodine
, 81 Ill. 2d at 509, 410 N.E.2d at 831.  

III

Plaintiff's next contention is that the Department's approach unfairly overstates actual net income from the Partnership over its three-year existence.  Therefore, it argues that this treatment is incorrect because section 201 of the Act only authorizes a tax on "net income."  See Ill. Rev. Stat. 1985, ch. 120, par. 2-201.  

According to the applicable version of the Act, "net income" is the taxpayer's "base income," or federally taxable income, with modifications, allocated or apportioned to Illinois less the standard deduction.  See Ill. Rev. Stat. 1985, ch. 120, pars. 2-

202, 2-203(b)(1).  The modifications include the addition of state and local bond interest and Illinois income tax paid as well as the subtraction of federal bond interest, Illinois income tax refunds and property replacement tax, to name a few.  Ill. Rev. Stat. 1985, ch. 120, par. 2-203(b)(2); see also 
Madison Park Bank v. Zagel
, 97 Ill. App. 3d 743, 745, 423 N.E.2d 939, 941 (1981), 
vacated as moot
, 91 Ill. 2d 231, 437 N.E.2d 638 (1982).  However, section 203(b)(2)(E) expressly excluded net operating losses "carried forward from a taxable year ending 
prior to December 31, 1986
."  (Emphasis added.)  Ill. Rev. Stat. 1985, ch. 120, par. 2-203(b)(2)(E).

Plaintiff first argues that this case should be controlled by 
Madison Park
.  In that case, the taxpayer had a negative federal taxable income for the 1974 tax year and carried the loss back to 1971 by filing amended Illinois and federal tax returns.  
Madison Park
, 97 Ill. App. 3d at 744-45, 423 N.E.2d at 940.  When the taxpayer then entered the 1974 loss on its 1974 Illinois return, the Department objected on the grounds that a double benefit for the 1974 loss would occur and argued that the taxpayer could only enter "zero," rather than a negative amount.  
Madison Park
, 97 Ill. App. 3d at 745, 423 N.E.2d at 940.  The court disagreed with the Department, finding no statutory limitation in the Illinois Act that would modify the federal definition of taxable income so as to only include positive amounts.  
Madison Park
, 97 Ill. App. 3d at 745-46, 423 N.E.2d at 941.  It applied section 102 of the Act (discussed above in part II, B) and determined that since the federal definition of taxable income is not limited to positive amounts, an Illinois return may contain taxable income in a negative amount.  
Madison Park
, 97 Ill. App. 3d at 745-46, 423 N.E.2d at 941.  However, the court rejected the Department's efforts to creatively interpret the Act and, instead, pointed to a portion of the statute that did not "permit the same item to be deducted more than once."  Ill. Rev. Stat. 1977, ch. 120, par. 2-

203(f); 
Madison Park
, 97 Ill. App. 3d at 746, 423 N.E.2d at 941.

We find 
Madison Park
 inapplicable in this case for two reasons.  First, the third district's decision was vacated as moot by the supreme court the following year and no longer has the force of law.  
People ex rel. Black v. Dukes
, 96 Ill. 2d 273, 278, 449 N.E.2d 856, 858 (1983), citing 
Madison Park
, 97 Ill. App. 3d 743, 423 N.E.2d 939.  Second, the 
Madison Park
 opinion apparently rejects loose interpretations of the Act that attempt to achieve equitable results.  Instead, the court relied on a strict reading of the statute and its relevant provisions.

Plaintiff also argues that the supreme court's decision in 
Continental Illinois Bank & Trust Co. v. Lenckos
, 102 Ill. 2d 210, 464 N.E.2d 1064 (1984), dictates an equitable reading of the Act that would provide relief from the excess tax liability.

At issue in 
Continental
 was the definition of "interest" in portions of the Act requiring addition modifications to taxable income and whether the taxpayer could amortize bond premium on federally tax exempt municipal bonds when determining Illinois base income.  
Continental
, 102 Ill. 2d at 214, 464 N.E.2d at 1066.  The interest on the bonds exceeded the rate of return on similar securities in the market, so the taxpayer paid a higher price for the bonds.  
Continental
, 102 Ill. 2d at 214-15, 464 N.E.2d at 1066; see 
Hanover Bank v. Commissioner of Internal Revenue
, 369 U.S. 672, 677, 8 L. Ed. 2d 187, 191, 82 S. Ct. 1080, 1083-84 (1962) (providing an explanation of bond premium).  However, because the interest paid by the bond was exempt from federal taxation but added to taxable income in Illinois, the taxpayer argued that "interest" under the Act should be interest paid minus the amortized bond premium, since the bond premium represented a return of capital.  
Continental
, 102 Ill. 2d at 214, 464 N.E.2d at 1066.   The supreme court agreed with the taxpayer.  It first found that the amortized bond premium was a return of capital, and not "net income" under the Act.  
Continental
, 102 Ill. 2d at 218, 410 N.E.2d at 1068.  Next, the court stated that there was no reason to treat federally tax-exempt bonds differently than federally taxable bonds, and that any distinction of this nature was arbitrary and would violate the uniformity clause of the Illinois Constitution.  102 Ill. 2d at 218-19, 410 N.E.2d at 1068.  Finally, the court found that the General Assembly's amendment allowing for deduction of bond premiums, even though not issued retroactively, was a clarification of existing law and, therefore, withstood the Department's contention of prospective application only.  
Continental
, 102 Ill. 2d at 219-20, 410 N.E.2d at 1068.

Thus, in 
Continental
, the court did what plaintiff seeks in this case, looked to the nature of the transaction involved and then analyzed it according to the objective of the Act.  The court found that a tax on a return of investment capital was improper since the Act only allows for the imposition of a tax on "net income."  
Continental
, 102 Ill. 2d at 218-19, 464 N.E.2d at 1068.  Here, plaintiff argues that we should look beyond the annual accounting principle and examine the integrated nature of the stock purchase/sale agreement in determining net income.  While this is a compelling argument from a fairness standpoint, it is difficult to move past the fact that the new section 207, enacted in 1985, expressly excluded coverage to tax years ending prior to December 31, 1986, and changed tax treatment under the Act.  
Continental
, on the other hand, did not confront an amendment of this nature.  As a result, it was reasonable for the supreme court to find that a subsequent amendment allowing the deduction of the amortized portion of interest paid on state and municipal bonds was a clarification of an existing law that could be applied retroac-

tively.  Here, however, in the absence of ambiguous statutory language, we will rely upon the plain language of the Act.  See 
Scalise v. Zarate
, 303 Ill. App. 3d 718, 723, 708 N.E.2d 421, 423 (1999).  Therefore, we find that the plain language of the Act precludes retroactive application.

IV

Plaintiff next contends that it was taxed more than its actual net income from the Partnership because the loss and income occurred in different taxable years, whereas a taxpayer making the same investment could offset its loss if the income and loss occurred in the same taxable year.  Therefore, it argues that the 1986 deficiency is invalid under the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §2) and the due process clause of the United States Constitution (U.S. Const., amend. XIV, §1).

A

The uniformity clause of the Illinois Constitution provides:

"In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly.  Exemptions, deductions, credits, refunds and other allowances shall be reasonable."  Ill. Const. 1970, art. IX, §2. 

To survive the scrutiny of the constitutional uniformity requirement, classifications contained in nonproperty tax laws must be based on a real and substantial difference between persons or entities taxed and those not taxed, and the classifications must bear a reasonable relationship to the object of the legislation-- in this case, raising revenue.  
Milwaukee Safeguard Insurance Co. v. Selcke
, 179 Ill. 2d 94, 98, 688 N.E.2d 68, 70 (1997), citing 
Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority
, 172 Ill. 2d 243, 250, 665 N.E.2d 1246, 1251 (1996); 
Searle Pharmaceuticals, Inc. v. Department of Revenue
, 117 Ill. 2d 454, 468, 512 N.E.2d 1240, 1245 (1987).  The party attacking the tax classification is not required to negate every conceivable basis  that might support it.  
Searle
, 117 Ill. 2d at 468, 512 N.E.2d at 1245.  Rather, the taxing body bears the initial burden of producing a justification for the classifications, and the party challenging the classifications has the burden of persuading the court that the justification offered is unsupported by the facts or insufficient as a matter of law.  
Allegro Services
, 172 Ill. 2d at 255, 665 N.E.2d at 1253-54.

In the instant case, the "real and substantial difference" in the taxing method employed is a result of the nature of the transaction.  Plaintiff asserts that it should not have been treated differently merely because it chose to structure its stock purchase agreement over a two-year period.  However, we do not find this argument persuasive.  See 
Commissioner of Internal Revenue v. National Alfalfa Dehydrating & Milling Co.
, 417 U.S. 134, 149, 40 L. Ed. 2d 717, 727, 94 S. Ct. 2129, 2137 (1974).  The Department relied on an annual accounting principle to provide a uniform and simplified taxation process.  It also disallowed carrybacks and carry forwards like those in IRC section 172 prior to the addition of section 207 because some taxpayers were using the same deductions twice.  So, to achieve the goal of raising revenue for the State of Illinois, the Department disallowed certain deductions.  It just so happens that plaintiff's loss occurred prior to the prospective amendment of the Act.  Yet this does not mean that the Department provided different tax treatment for corporations due to the substance of their business (
Federated Distributors, Inc. v. Johnson
, 125 Ill. 2d 1, 530 N.E.2d 501 (1988) (invalidating legislation that provided different tax treatment for wine coolers and low-alcohol beverages made with spirits)) or the types of bonds they purchase (
Continental
, 102 Ill. 2d 210, 464 N.E.2d 1064).  Thus, as previously stated by the supreme court, "[t]hough a given taxpayer may therefore enjoy no tax benefit from a particular loss, we cannot say that the scheme adopted by the General Assembly is an improper exercise of its taxing authority."  
Bodine
, 81 Ill. 2d at 512, 410 N.E.2d at 833.

B

In the taxation context, due process requires that the taxpayer have "some minimum connection" with the taxing body and that the tax is "rationally related to 'values connected with the taxing [s]tate.' " 
Quill Corp. v. North Dakota
, 504 U.S. 298, 306, 119 L. Ed. 2d. 91, 102, 112 S. Ct. 1904, 1909-10 (1992), quoting 
Moorman Manufacturing Co v. Bair
, 437 U.S. 267, 273, 57 L. Ed. 2d 197, 204, 98 S. Ct. 2340, 2344 (1978).  Plaintiff claims that since the overstated income did not exist, "Illinois cannot claim that it has nexus with it."  The case it cites in support of this proposition, 
Allied-Signal, Inc. v. Director, Division of Taxation
, 504 U.S. 768, 119 L. Ed. 2d 533, 112 S. Ct. 2251 (1992), is not applicable to the case at bar because it addressed the principle that a state may not tax value earned outside its borders.  As stated in the Department's brief, plaintiff has not made an argument on this basis.  Instead, in one paragraph containing two sentences, it offers a few citations and concludes that the application of the Act was unconstitutional.  A reviewing court such as this one deserves the benefit of cohesive legal argument and is not a dumping ground for argument and research.  See 
In re Marriage of Auriemma
, 271 Ill. App. 3d 68, 72, 648 N.E.2d 118, 120 (1994).  Accordingly, we also reject plaintiff's due process argument.

V

Plaintiff's final contention on appeal is that it should not have to pay $350,076 in penalties and interest.  In support of this position, plaintiff states that it had "reasonable cause" not to pay the tax at issue here.  See Ill. Rev. Stat. 1985, ch. 120, par. 10-1005(a).

Unlike the other issues, this presents a mixed question of law and fact that may only be overturned if found to be clearly erroneous.  See 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998).  

Plaintiff asserts that it relied on the work of its accountants and honestly believed that it would not be liable for additional taxes.  However, in 
Miller Brewing Co. v. Korshak
, 35 Ill. 2d 86, 219 N.E.2d 494 (1966), the Illinois Supreme Court determined that a taxpayer's asserted belief that it is not liable to pay certain taxes is an insufficient basis to set aside a penalty for nonpayment.  Therefore, we find that plaintiff did not have reasonable cause to avoid payment of taxes and it should have to pay both penalties and interest.

CONCLUSION

For the aforementioned reasons, we affirm the judgment of the circuit court of Cook County requiring plaintiff to pay $596,737 in unpaid taxes, interest and penalties.

Affirmed. 

Zwick, P.J., and O'Brien, J., concurring.

FOOTNOTES
1:

In accordance with accounting convention, losses will be indicated by the use of parentheses.

2:

Income and taxes for 1985 are not at issue in this case.

3:

This provision is currently codified at 35 ILCS 5/201(a) (West 1992).  However, because this case concerns tax years ending prior to December 31, 1986, we will rely on the 1985 version of the Act unless otherwise noted.

4:

Before reaching a final base income figure, the Act requires modifications called "addition modifications" and "subtraction modifications."  Ill. Rev. Stat. 1985, ch. 120, par. 2-203(b)(2).

5:

Apportionment is the method used by the statute to describe the process of dividing business income earned in Illinois and at least one other state.  In this process, the income attributable to Illinois is determined by multiplying the taxpayer's total business income by a percentage representing the taxpayer's presence in the state.  See Ill. Rev. Stat. 1985, ch. 120, par. 3-304.  Allocation, on the other hand, looks at where income was generated.